Houston & Texas Central Railroad Company v. City of Dallas.

No. 1346.  Decided January 26, 1905.

**1.—City Charter—Control of Railway Crossing Grades.**

Section 113 of the charter of the city of Dallas, giving its city council authority to require railways to construct such crossings, etc., as the city council might deem necessary, committed to that body authority to de- termine the character of such crossings and to require, in a proper exercise of the police power, their conformity to the grade of the streets crossed;· and such authority extended over railroads previously constructed as well as those which should afterwards be built.  (Pp. 411, 412.)

**2.—Same—Police Power—Mandamus—Constitutional Law.**

A proceeding by mandamus to compel a railway to conform the grade of its crossing to those of the streets crossed as required by an ordinance of the city was an exercise of the police power, reserved by the State and delegated by it to the city, and not unconstitutional as involving a taking or damaging of property without compensation, nor as a local assessme..t for improving the streets, though the company was required to bear the entire expense.  (P. 412.)

**3.—Same—Effect of Crossing Grades on Grades Elsewhere.**

The fact that the required lowering of the railway grade at crossings would necessitate its lowering between crossings also was no bar to the right of the city council to regulate the grades at crossings, but should be considered, in connection with all other pertinent facts, in determining the reasonableness of such exercise of power.  (Pp. 412, 413.)

**4.—Crossing Grade—Mandamus—Pleading.**

A petition for mandamus to require a railway to conform its grade at crossings to that of the streets crossed as required by a city ordinance, which gave the height .of the railway grade above the street at each of the crossings sought to be affected, sufficiently informed the defendant of the action sought to be required of it.  (P. 413.)

**5.—Police Power—Distinguished from Taking—Compensation.**

The exercise of such police power over the use of property as may be required by the public safety is distinguishable from the taking or damaging property for public use, and its legitimate exercise does not require compensation, though it may impose expense on the property holder. (Pp. 413-415.)

**6.—Same—Limits of Police Power—Reasonable Regulation.**

The police power, though its limits are not capable of precise definition, is not arbitrary or unrestrained; the courts may inquire into the reason- ableness of a proposed exercise of it, and may deny the right where the public protection to be accomplished by a city ordinance invurves an op- pressive loss to the property owner affected, in proportion to the good accomplished, the question of reasonableness being one of law, but de-, pendent upon the facts to be established.  (Pp. 415-418.)

**7.—Same—Pleading.**

Though presumption will be indulged in favor of the reasonableness of the police power sought to be exercised by a city ordinance, the allegations of an answer to a petition seeking to enforce compliance with such ordinance by mandamus, showing the loss infl·cted on defendant to be very great, the benefit sought to the public doubtf"l, or even +o their disadvantage. and com- pliance with the regulation practically impossible, presented issues of fact con- stituting a good defense to ·the action and were not subject to demurrer. (Pp. 418, 419.)

**8.—Railway as Abutting Owner.**

A railway owns its right of way through a city subject to the proper exercise of the police power over the grade of its street crossings, and can not claim compensation for being compelled to lower such crossing grade on the ground that it injures its property (right of way) abutting on such street. P. 420.)

**9.—Ordinance—General Application.**

A railway is not discriminated against by a city ordinance regulating

street crossings on all railways within the city alike, nor by being selected as the first against which the city attempts to enforce such ordinance by an action for mandamus to compel compliance with it.   (P. 420.)

**10.—Mandamus—Other Adequate Remedy.**

The existence of an ordinance under which city authorities are authorized to proceed to do the work of reducing the grade of railways at street crossings does not prevent an action for mandamus to require the railway to do such work in compliance with the ordinance of the city.   (P. 420.)

Error to the Court of Civil Appeals for the Fifth District.

The city of Dallas sued the railway company for mandamus to compel its compliance with city ordinances regulating the grade of street crossings. Exceptions were sustained to the answer of defendant, and judgment rendered against it on its declining to amend. Defendant appealed, and on affirmance of the judgment obtained writ of error from the Supreme Court.

*Baker, Botts, Parker & Garwood, R. DeArmond,* and *W. J. J. Smith,* for plaintiff in error.—The ordinance made an exhibit to the petition is void for want of power in the city council to pass or enforce the same. Dillon on Mun. Corp., 4 ed., secs. 393, 374, 316, 89; Gridley v. Bloomington, 88 Ill., 554. See sections of the charter, to wit: Sections 48, 59 and 113 grouped under the caption "General Powers of the City Council," and section 158, immediately following the specific caption "Street Improvement," and especially that portion of said section 48 which makes the said general powers of section 113 "subject to other provisions of this act."

If the charter of the city of Dallas does attempt to confer such power upon the city council, it is by virtue of section 113 of the charter of the city of Dallas of 1899, which applies only to the original laying and construction of railroad tracks after the date of said charter, and not to tracks already in existence at the time said charter was granted; and there is no allegation in the petition that the defendant's track was constructed since that time, and such allegation was indispensable.   See secs. 113 and 158, chap. 8, Acts 26th Leg.

The ordinance itself was not intended to have a retroactive effect, but was intended to operate only upon future original laying and construction of railroad tracks; or, if intended to be retroactive, is void for want of power in the city council.   Secs. 113 and 158, chap. 8, Acts 26th Leg.

If said section 113 of the Dallas charter was intended to apply to railroad tracks already in existence, it was not intended to apply to any portion of railroad tracks except street crossings, and plaintiff's suit is not to have defendant's tracks brought to the grades of the respective streets at the street crossings only, but includes one and two-thirds miles of defendant's embankment and track, and includes the reduction of defendant's embankment and track between street crossings and at places in which the public have no concern, to which neither the charter nor the ordinance has any reference or application, and is an attempt to take

and damage defendant's property for no public use, and without due compensation and due course of law. Constitution, art. 1, sec. 16.

If said section 113 of the Dallas charter, or other portions of said charter (except section 158, presently to be mentioned), confers any power on the city council to pass the ordinance, the power is but a general one, and intended to apply only to street crossings, and not to defendant's private right of way between the streets, and the said section 113 is governed and controlled by the specific power and obligation contained in section 158 of the charter, which has special reference and application to intersections of streets with railway tracks, and provides that for any grading or other improvements of such intersections the city shall pay a portion of the expense and the railroad a portion, the procedure and pro rata of expense being in said section 158 definitely and positively provided for, and there is no allegation in the petition that the defendant has declined to allow the city to proceed according to section 158, and no allegation that the city offers to pay any portion of the expenses of the regrading of said street intersections, nor that there were any streets whatever intersecting defendant's track at the time its embankment was constructed, but the petition seeks, in defiance of said special duty and power of the city, prescribed in said section 158, to compel defendant to grade and improve said street intersections entirely at its own cost. Vosburg v. McCrary, 77 Texas, 568; secs. 48, 113 and 158, Charter.

Plaintiff's suit, in effect, is an attempt to regrade its streets at the sole expense of defendant, contrary to the charter, and it appears from said petition that by such regrading defendant's private property and easement to use its property along its embankment between the intersecting streets would be thereby taken and damaged for no public use, and without compensation. Constitution of Texas, art. 1, sec. 17; City of Fort Worth v. Howard, 3 Texas Civ. App., 537; 2 Lewis on Eminent Domain, 2 ed., p. 1107, sec. 494, and authorities in note 78, and vol. 1, p. 521, sec. 223.

It appears from said petition and the city charter that plaintiff has an adequate remedy at law, in that it may regrade its own streets and improve the intersections with defendant's railroad, and make the same, so far as proper, a charge against defendant; and the petition nowhere alleges that defendant is insolvent or unable to respond to any judgment at law that plaintiff may claim against it, and was in that respect insufficient.

The court erred in overruling defendant's second special exception to plaintiff's petition, in that there is no allegation in said petition as to what the respective grades of each of the alleged intersecting streets are at the respective points of intersection with defendant's track, nor on either side of defendant's track, nor what such grades are relative to each other, without which it was impossible for defendant to know how

much, if any, its track should be lowered at each of said respective intersections.

It was an indispensable allegation that there was an official established grade of each street on either side of defendant's track, since the ordinance could have reference to no other kind of grade.

An allegation that there had been established and adopted an official grade of the streets named in the petition, on either side of defendant's track, and that same had been ·furnished or made known to defendant by ordinance or resolution of the council or otherwise, was indispensable.

The allegations of the answer are to be treated as confessed, and are sufficient to show that the ordinance was unreasonable and void, and constituted, if true, a defense to the suit. 1 Modern Law of Mun. Corp. (Smith), sec. 606, note 248, sec. 525; City of Austin v. Cemetery Ass'n, 87 Texas, 331; 1 Dillon, Mun. Corp., secs. 327 and 328.

If the council had power to pass said ordinance and make it applicable to this defendant, it was under but a general power, and the facts of the answer, if true, showed an oppressive and unreasonable exercise thereof, and constituted a defense to the suit. Smith, Modern Law of Mun. Corp., sec. 525, note 189, and sec. 526; Pye v. Peterson, 45 Texas, 312.

The facts of the answer show that plaintiff's suit in effect is to compel defendant, at its sole expense, to reduce its grade for the distance of one and two-thirds miles along its private fenced right of way, as well as at the crossing of intersecting streets, so as to make its grade at such street crossings conform to the grade of the intersected streets, whereas section 113 of the city charter, relied upon by plaintiff, does not purport to empower the council to require railroad companies to lay their tracks flush with the streets, but only "so as to interfere as little as possible with the ordinary travel and use of the streets," and it does not purport to empower the council to require railroad companies to regrade sections of the street at their own expense, but only to construct crossings at their own expense· after the city has performed its duty of regrading the streets or any portions thereof as required of the city under section 158 of said charter, and the same answer thereby showed that said ordinance is unenforceable in the manner sought by plaintiff in this suit. Dillon, Mun. Corp., 4 ed., sec. 316; Hawes v. Chicago, 158 Ill., 655; Ft. Wayne v. Lake Shore Ry. Co., 18 Law. Rep. Ann., 371.

The portion of the answer excepted to, alleging that the embankment complained of was constructed with the full knowledge, acquiescence, direction and consent of the city of Dallas, and that such grade, at the time it was constructed, and ever since, has been necessary to enable defendant to properly and safely conduct its business, showed that defendant's grade was as low as the council was authorized, under section 113, to compel it to be reduced. Galveston & W. Ry. Co. v. Galveston,

90 Texas, 398; Rio Grande Ry. Co. v. Brownsville, 45 Texas, 88; Mayor v. Railway Co., 83 Texas, 548.

The language of section 113 of the charter, "to direct and control the laying and construction of railroad tracks  *  *  *  and to require that they be constructed and laid so as to interfere as little as possible with the ordinary travel and use of the streets, and to require that they be kept in repair," has application only to original construction of railroad tracks, and the portion of the answer excepted to, showing that defendant's grade was established twenty-five years before said charter was granted to the city of Dallas, presented a complete defense to the ordinance relied upon, if said ordinance can in any event be predicated upon the power granted in said section 113, and showed that neither the said charter nor ordinance is applicable to defendant's grade complained of.

If the portion of the answer excepted to did not constitute a distinct defense, it was nevertheless proper and material upon the history of the embankment and the oppressive unreasonableness of the ordinance.

The power in section 113 of the charter to require that railroad tracks be constructed and laid so as to interfere as little as possible with the ordinary travel and use of the streets, properly construed, does not necessarily authorize the council to pass an ordinance requiring that railroad tracks be flush with the street, but contemplates that there may be some interference, and the allegation in the portion of the answer excepted to, that the grade complained of is necessary, raised a material issue of fact as to whether the council had not exceeded its charter power in passing the ordinance relied upon, and as to whether said ordinance is applicable in this case.   3 Ballard's Law of Real Prop., sec. 675.

As to new streets projected across defendant's embankment, after it was built, and across that portion of its embankment which, when built, was without the corporate limits of the city of Dallas, the embankment became a part of the grade of such streets, and the regrading of those portions of such streets is specifically made the duty of the city, under section 158 of the charter, and the allegations of the answer excepted to presented a distinct defense to the suit of the city to have defendant regrade such portions of such streets at its own expense.   Sec. 158 of Charter; 3 Ballard's Law of Real Prop., sec. 677.

If the allegations of the answer to which the said second and third special exceptions were directed did not constitute a distinct and separate matter of defense, the facts alleged were nevertheless material, pertinent and proper upon the defense of oppressive unreasonableness of said ordinance, and to show the history of such grade.

The court erred in sustaining plaintiff's fourth special exception to defendant's answer, in this, that the inconvenience, cost, expense and impracticability to the defendant of carrying out the demands of plaintiff were all legitimate allegations upon the oppressive unreasonableness of the ordinance, as asserted by the defendant in its answer.

The city of Dallas had no power whatever under the charter to pass said ordinance, or to make it applicable to the defendant, in the manner claimed in this suit.

Said ordinance is not sanctioned by any direct, express power vested in the plaintiff under its charter, but if authorized at all, is under' a mere general power, and the averments of the answer were sufficient, if true, to show that the ordinance was unreasonable.

If the city council is vested by its charter with power, either express, specific, general or implied, to pass said ordinance and make it applicable to defendant, under the facts alleged in defendant's answer, then the act of the Legislature granting to the city of Dallas such charter powers is contrary to the Constitution of the State of Texas, and to the Constitution of the United States, and is null and void. Art. 1, sec. 10, and 5th and 14th amendments, Constitution of U. S.

The allegations of defendant's said answer, attacking said ordinance on the ground of unreasonableness, were sufficient in any event to entitle defendant to a trial by jury upon that issue and all the issues pertaining thereto.

The court erred in sustaining plaintiff's sixth special exception to defendant's answer, in this, that plaintiff's suit is but an effort to regrade its streets at their respective intersections with defendant's track, and for some distance on either side thereof, and defendant, as an abutting owner, would be entitled to compensation, if the facts alleged in its answer are true, should the city so regrade said portions of said streets, and defendant can not be compelled by the city to so damage its abutting property, at its own expense and without compensation for the damage resulting to its abutting property on either side of each street at the intersections. Art. 1, sec. 17, Constitution of Texas; City of Fort Worth v. Howard, 3 Texas Civ. App., 537; 2 Lewis on Em. Dom., 2 ed., secs. 494, 223.

The allegations, in the latter part of section 6 of said answer, showing as they do that the effect of compelling defendant to reduce its grade would be to require it to construct, at the enormous expense of $60,000, a sewer for the protection of its right of way and track, and which would necessarily be a public sewer for the reception of storm and rain waters which would become tributary thereto from sections of the country not tributary to defendant's right of way, present a valid defense of denial of equal protection of the laws, when under the charter of the city of Dallas public drainage is to be effected at public expense. 14th Amendment, Constitution of U. S.

If the said allegations, to which the exception was addressed, do not present a valid defense of the denial of equal protection of the laws, such allegations nevertheless were material and proper upon the unreasonableness of the ordinance and the oppressive and unreasonable exercise of the power, if any, of the city council, and should not have been stricken out on exception.

The existence of a criminal remedy is sufficient to defeat the extraordinary equitable remedy of mandamus. City of Gloucester v. Brown, 24 N. J. Eq., 89; Morris & E. Ry. Co. v. Prudden, 20 N. J. Eq., 530; Holtz v. Heishon, 18 N. J. Eq., 410; Texas Penal Code, art. 480; ordinance pleaded.

The existence of an adequate legal remedy is sufficient to defeat the extraordinary equitable remedy of mandamus. Dillon, Mun. Corp., sec. 287; sec. 158, Charter.

The court erred in striking out and holding for naught defendant's original answer, in that there were sufficient allegations, matters and defenses left in the said answer, after all of plaintiff's exceptions, as aforesaid, had been sustained, to entitle defendant to a hearing upon the issue as to whether the embankment complained of in this suit was such an inconvenience, menace or nuisance to travel upon the streets alleged, as to entitle plaintiff to the relief sought.

The allegations of the answer are to be treated as confessed, and are sufficient to show that the ordinance was unreasonable and void, and constituted, if true, a defense to the suit. 1 Modern Law of Mun. Corp. (Smith), sec. 606, note 248, sec. 525; City of Austin v. Cemetery Ass'n, 87 Texas, 331; 1 Dillon, Mun. Corp., secs. 327, 328.

If the council had power to pass said ordinance and make it applicable to this defendant, it was under but a general power, and the facts of the answer, if true, showed an oppressive and unreasonable exercise thereof, and constituted a defense to the suit. Smith, Modern Law of Mun. Corp., sec. 525, note 189, and sec. 526; Pye v. Peterson, 45 Texas, 312.

The facts of the answer show that plaintiff's suit in effect is to compel defendant, at its sole expense, to reduce its grade for the distance of one and two-thirds miles along its private fenced right of way, as well as at the crossing of intersecting streets, so as to make its grade at such street crossing conform to the grade of the intersected streets, whereas section 113 of the city charter, relied upon by plaintiff, does not purport to empower the council to require railroad companies to lay their tracks flush with the streets, but only "so as to interfere as little as possible with the ordinary travel and use of the streets," and it does not purport to empower the council to require railroad companies to regrade sections of the street at their own expense, but only to construct crossings at their own expense after the city has performed its duty of regrading the streets or any portions thereof as required of the city under section 158 of said charter, and the same answer thereby showed that said ordinance is unenforceable in the manner sought by plaintiff in this suit.

The ordinance tested by the facts pleaded is unreasonable and void. City of Austin v. Cemetery Association, 87 Texas, 331; City of Indianapolis v. Railway Co., 66 N. E. Rep., 163; State v. City of Trenton, 53 N. J. L., 132; In re Ah You, 88 Cal., 99; City of Chicago v. Trotter, 136 Ill., 430; Des Moines City Ry. Co. v. City of Des Moines,

58 N. W. Rep., 906; Evison v. Ry. Co., 45 Minn., 370; City of Lakeview v. Tate, 130 Ill., 247; Soon Hing v. Crowley, 113 U. S., 703.

The ordinance sought to be enforced is not, under the facts alleged in the answer, a reasonable exercise of police power, but is an assertion of the power of eminent domain, which, by an ex post fact law, takes, damages and destroys private property for public use without compensation, and deprives plaintiff in error of its liberty, property, privileges, franchises and immunities without due process of law, in violation of both State and Federal Constitutions. Chicago, M. & St. P. Ry. Co. v. City of Milwaukee, 97 Wis., 419; City of Seattle v. Columbia, etc., Ry. Co., 33 Pac. Rep., 1048; City of Baltimore v. Cowen, 88 Md., 447; Chicago, etc., Ry. Co. v. Chautauqua County, 31 Pac. Rep., 736; Kansas, etc., Ry. Co. v. Jackson County, 26 Pac. Rep., 494; Greenwood County v. Railway Co., 26 Pac. Rep., 397; Kansas City v. Railway, 102 Mo., 633; Illinois C. Ry. Co. v. Bloomington, 76 Ill., 448; State of Minnesota v. District Court, 7 Law. Rep. Ann., 121; People v. Railway Co., 44 N. W. Rep., 934; Chicago, etc., Ry. Co. v. Hough, 61 Mich., 507; City of Grand Rapids v. Railway Co., 58 Mich., 641; Massachusetts C. Ry. Co. v. Railway Co., 121 Mass., 124; Old Colony, etc., Ry. Co. v. County of Plymouth, 14 Gray, 155; Central Ry. Co. v. City of Bayonne, 51 N. J. L., 428; Northern C. Ry. Co. v. Mayor, 46 Md., 445; Chicago B. & O. Ry. v. City of Chicago, 166 U. S., 226.

*W. T. Henry* and *Jas. J. Collins,* for defendant in error.—We do not understand that appellant questions the existence of the power in the State, or the municipality acting under authority from the State, to regulate and control the grade of railroad tracks and to compel the establishment of crossings for intersecting streets, but rather denies the application of the rule under the particular circumstances of its case. We, however, cite the authorities to show the well settled condition of the law, thinking that their examination on the part of the court will not be inappropriate and will be of substantial assistance to the court in the consideration of the numerous objections made by appellant to the exercise of a power, the well recognized existence of which in the law can not be doubted, and accordingly, for that purpose, call the attention of the court to the following authorities: Elliott on Roads and Streets, secs. 75, 778, 779, 780; 2 Bailey on Jurisdiction, secs. 810 to 813; Gulf C. & S. F. Ry. Co. v. Rowland, 70 Texas, 298; New York & New England Ry. Co. v. Bristol, 151 U. S., 556; People v. Boston & Albany Ry. Co., 70 N. Y., 569; State v. St. Paul, etc., Ry. Co., 59 Am. Rep., 313; Chicago, etc., Ry. Co. v. State, 53 Am. State Rep, 557; Cleveland v. City of Augusta, 43 Law. Rep. Ann., 638; Illinois Central Ry. Co. v. City of Chicago, 141 Ill., 586; Cook v. B. & L. Ry. Co., 133 Mass., 188; Tiedeman on Mun. Corp., sec. 1102.

An examination of the above authorities, we believe, will demonstrate beyond the reach of controversy that the power exists in the State and its agencies, as an exercise of the reserved police power of the State,

to require the conformance of railroad tracks already constructed with the grade of intersecting highways, and that the authority applies no less to highways extended after the construction of the railroad track, than to those existing at the time of its construction.

The charter of the city of Dallas expressly confers the power upon the said city of Dallas, in section 113, to compel railroads to reduce their existing tracks at street intersections to conform to the grade of intersecting streets and to place and construct proper crossings at their own expense. Chicago, etc., Ry. Co. v. State, 53 Am. St. Rep., 557; Cleveland v. City of Augusta, 43 Law. Rep. Ann., 638; Memphis, etc., Ry. Co. v. State, 11 S. W. Rep., 946; Elliott on Railroads, sec. 1102.

The ordinance of the city of Dallas, under which this proceeding is instituted, applies by its terms to existing railroads and those constructed in the future, and as such is not a regulation with retroactive effect. Same authorities.

The suit of appellee was merely for the purpose of requiring the appellant to conform the elevation of its tracks to the grade of the intersecting streets which its embankment obstructed, and no other relief was sought in the petition of appellee in the court below.

The express and specific power granted to the city of Dallas in section 113, for the accomplishment of the removal of obstructions created by railroad embankments intersecting public streets, by the construction of safe and satisfactory crossings at such intersections, is not abrogated or affected by the power contained in section 158 relating to the general improvement of streets, or sections of streets.

The power which appellee seeks to exercise in this case is the police power existing in the State, and expressly delegated by the Legislature to the appellee, to reduce the danger of railroad crossings at street intersections, and for any consequential injury caused appellant by enforced obedience to such lawful regulation, it is not entitled to compensation. Chicago B. & Q. Ry. Co. v. Chicago, 166 U. S., 254; Cleveland v. City of Augusta, 43 Law. Rep. Ann., 638; Keller v. City of Corpus Christi, 50 Texas, 614; Bowditch v. Boston, 101 U. S., 16; Dillon on Mun. Corp., sec. 141; 18 Am. and Eng. Enc. of Law, p. 742; Eichenlaub v. City of St. Joseph, 21 S. W. Rep., 8.

Appellee was entitled to relief by mandamus and was without any other adequate or efficient remedy at law. Chicago, etc., Ry. Co. v. State, 53 Am. St. Rep., 557; State v. Lake Erie Western Ry. Co., 83 Fed. Rep., 284; City of Moundsville v. Ohio River Ry. Co., 20 Law. Rep. Ann., 161; People v. Boston & Albany Ry. Co., 70 N. Y., 569; Bailey on Jurisdiction, sec. 814.

The petition of plaintiff in the court below specifically sets forth the grades of the intersecting streets relative to the elevation of the defendant's track, and shows explicitly the distance it would be necessary to reduce same to conform to the intersections.

The court properly sustained a general demurrer to the answer of the

appellant, in that there was nothing in the answer of appellant which constituted a valid defense to the suit of appellee.

The ordinance of the city council involved in this suit was passed under a special and specific authority conferred upon it by the Legislature and its reasonableness can not be inquired into.

If the reasonableness of the ordinance in question was a matter for judicial inquiry, its reasonableness was a question to be determined by the court as a matter of law, and there are no facts shown in the answer of appellant which would justify the court in determining that the city council acted unreasonably in passing the regulation in question as an effort to reduce the danger to the public in the use of the intersecting streets over the railroad track of appellant. City of Austin v. Cemetery Assn., 87 Texas, 330; Haynes v. Cape May, 50 N. J. L., 55; Mills v. M. K. & T. Ry. Co., 94 Texas, 247; Walker v. Jameson, 49 Am. St. Rep., 222; Skaggs v. Martinsville, 49 Am. St. Rep., 209; Beiling v. City of Evansville, 144 Ind., 644; State v. Payssan, 49 Am. St. Rep., 390; Lindsay v. Mayor of Anniston, 104 Ala., 257; Phillips v. City of Denver, 19 Col., 179; Ex parte Heilbron, 65 Cal., 609; Raffetto v. Mott, 60 N. J. L., 413; Beach on Public Corp., sec. 512; Dillon on Mun. Corp., sec. 328; People v. Pratt, 129 N. Y., 68; Wygant v. McLauchlan, 64 Pac. Rep., 867.

A municipality can not by acquiescence or consent or express contract deprive itself of the right to exercise its police power when action shall demand its exercise for the public safety and convenience, and no right was shown by the allegations of appellant's answer to the effect that it had maintained its track and road bed for a long period of time in its elevated condition with the knowledge, acquiescence and consent and without objection from the city of Dallas.

The history of the embankment, showing its long continued existence, was immaterial for any purpose.

Section 113 of the city charter, authorizing the city council to reduce railroad tracks so as to interfere as little as possible with the ordinary travel and use of the streets, authorizes and demands the ordinance passed by the city council requiring the reduction of the track and embankment on which the track was located to conform to the grade of the intersecting streets.

The fact that the railroad embankment when originally constructed was at the location of some of the intersecting streets without the corporate limits of the city of Dallas, and the corporate limits having been extended and the streets laid out subsequent to the construction of the tracks, did not impair the power of the city to require the reduction of the track and grade of appellant at such street intersections. Cleveland v. City of Augusta, 43 Law. Rep. Ann., 636; Elliott on Roads and Streets, sec. 778 and note; Elliott on Railroads, sec. 1102; Thompson on Corp., sec. 5505; New York & N. E. Ry. Co. v. Bristol, 151 U. S., 556.

The ordinance of the city council having been passed under a special authority could not be judicially reviewed upon the question of its reasonableness, and the allegations of the answer to which the second and third special exceptions were directed were not material or pertinent for any purpose in the case.

The allegations of appellant's answer charging inconvenience, cost, expense and impracticability to appellant as a result of compliance with the regulation of the ordinance in question were immaterial and irrelevant as affecting the validity of the ordinance; such considerations being controlled by the convenience and safety of the public in the use of the intersecting highways.

The power exercised by the city of Dallas in this case was by virtue of the police authority conferred upon it by the Legislature, and any person whose property is injured as a result of the exercise of the police power is not entitled to compensation therefor.

The defendant's answer failed to show by any facts alleged that it was denied the equal protection of the law, and the seventh special exception of appellee was properly sustained.

The fact that appellant was maintaining its track and embankment south of the track of Texas & Pacific Railroad Company in violation of law was no legal defense to the maintenance of its track at intersecting streets north of the Texas & Pacific Railroad Company in violation of law, and the eighth special exception of appellee was properly sustained.

Appellee had no adequate or sufficient remedy other than mandamus. Chicago, etc., Ry. Co. v. State, 53 Am. St. Rep., 557; State v. Lake Erie Western Ry. Co., 83 Fed. Rep., 284; City of Moundsville v. Ohio River Ry. Co., 20 Law. Rep. Ann., 161; City of Oshkosh v. Milwaukee L. W. Ry. Co., 43 N. W. Rep., 489; People v. Boston & A. Ry. Co., 70 N. Y., 569; Bailey on Jur., sec. 814.

There was no fact alleged in the answer of appellant which afforded any defense against the enforcement of the ordinance of the city of Dallas passed in the exercise of the police power reserved in the State and expressly and specially delegated by the State to the city council of Dallas for the purpose of insuring the safety of public crossings for the general welfare. Richmond, etc., Railroad Co. v. Richmond, 96 U. S., 521; Matter of Yick Wo, 58 Am. Rep., 12; City of St. Paul v. Colter, 90 Am. Dec., 281.

The answer of appellant presenting no matter which afforded a defense in law to the enforcement of the regulation of the municipality and its enforcement by mandamus, the plaintiff was in the court below entitled to a judgment in its favor upon its sworn petition and such judgment was correctly rendered by the court.

WILLIAMS, ASSOCIATE JUSTICE.—Section 54 of the charter of the city of Dallas gave to the city council control and power over the streets, alleys, crossings and highways of the city and power to abate or remove

all encroachments or obstructions thereon; to open, widen, extend, regulate, grade, pave the streets and to protect same from encroachments and injury of any kind whatsoever.

Section 59 conferred power to regulate, establish and change the grade of all sidewalks, streets and premises, and to require and compel the filling up and raising same.

Section 113 gave authority "to direct and control the laying and construction of railroad tracks, turnouts and switches, and to require that they be constructed and laid so as to interfere as little as possible with the ordinary travel and use of the streets, and to require that they be kept in repair. To regulate the use of locomotive engines, to direct and control the location of cable and other street and railroad tracks, and all steam railroad tracks, and to require railway companies of all kinds to construct at their own expense such bridges, turnouts, culverts, crossings and other things, as the city council may deem necessary. To regulate the speed of all railroad trains within the ·city. limits, and their stops at street crossings, and to require said companies to keep the streets through which they run in repair, and to light the same whenever deemed necessary, and to prescribe the kind of light to be used, and to levy special taxes or assessments against such roads for street improvements, the same as against property owners."

Section 158 provided a method by which the city council was empowered to "grade, fill, raise, repair, macadamize, remacadamize, pave, repave or otherwise improve" its avenues, streets and alleys, and provided that all such improvements should be entirely at the cost of the city, except that the owners of railroads operated "on such street, avenue or alley" were required to pay for improving the part of the streets between the rails and between the tracks and for two feet on each side of·the rails, etc., to secure and enforce which payment a procedure is prescribed.

On the 23d day of November, 1901, this action was begun by the city for a mandamus to compel the plaintiff in error, as respondent, to reduce its tracks in the city to the level of certain streets at crossings mentioned in the petition. The allegations are, in substance, that the respondent operates its road through the city approximately north and south; that the part of the track extending from Pacific Avenue, on the south, to the corporate line, on the north, a distance of about a mile and two-thirds, is upon an embankment ranging from nine-tenths of a foot to four and seven-tenths feet high, causing the track to stand at a considerable elevation above the adjacent land; that numerous streets, including twelve which are named, .cross the embankment and track, all of which are much used by the public; that at the crossing of each street the embankment is an obstacle and impediment to the free and convenient and safe and satisfactory use and enjoyment of the streets by the public for ordinary travel. The petition then gives the elevation of the track above the streets at each crossing and proceeds to allege that it is

essential to the public convenience and safety that at the crossing of such streets the track should be reduced to the grade of the street; that in pursuance of power granted in its charter the city council, on the 9th day of October, 1901, adopted the following ordinance:

" 'Be it ordained by the city council of the city of Dallas:

" 'Sec. 1. That all railroad tracks in the city of Dallas shall be laid and constructed and so kept and maintained as to interfere as little as possible with the ordinary travel and use of the streets crossed by such railroad track, or tracks, by the owners of such tracks, and at their expense.

" 'Sec. 2. That whenever and wherever any railroad track or tracks cross or intersect any street of the city of Dallas, the person, association or corporation owning said track or tracks shall keep and maintain the same at a grade with the street on either side of the crossing, and whenever at any crossing with any street of the city of Dallas any railway track is either above or below the grade of the street crossed, such track or tracks shall by the owner thereof be reduced or elevated, as the case may be, to conform with the grade of the street intersected, and such crossing shall be made to conform to the grade of such intersected street entirely at the expense of the person, association or corporation owning the track or tracks crossing the street.

" 'Sec. 3. That after the track or tracks have been reduced or elevated to grade of the intersected street, as above provided, it shall be the duty of the owner of the track or tracks to place and maintain the crossing in such a condition as to interfere as little as possible with the ordinary travel and use of the street.' "

That the respondent in disobedience and violation of said ordinance continues to maintain its embankment and track as stated, and that the plaintiff has no other adequate remedy than a mandamus to compel a reduction of the grade, etc. The prayer was for a writ to compel the respondent to reduce its track to conform to the grade of the streets as required by the ordinance.

In its answer the respondent by general demurrer and special exceptions raised the following objections to the petition:

1. The ordinance set up is void for want of power in the city council to pass it, the provisions of the charter relied on as a grant of such power applying only to the laying and construction of railroad tracks after the passage of the charter, and there being no allegation that this track was of this class.

2. The ordinance itself was not intended to apply to tracks already laid, but only to such as should be laid after its adoption.

3. The plaintiff sought to require respondent to reduce its grade, not only at street crossings, but between them, when the charter only applied to crossings.

4. That the change proposed by the city in the grade of the crossings is in reality an attempt on its part to regrade its streets, which is con-

trolled by section 158 of the charter requiring the city to pay its proportion of the expense thereof, whereas the city seeks to have the respondent make the change and pay the entire expense.

5. That such action would be a taking and damaging of respondent's property for no public use and without compensation.

6. That the petition does not allege the respective grades of the streets with reference to each other or with reference to any other grade, nor show that plaintiff has ever furnished to respondent information of such grades so as to enable it to comply with plaintiff's demand.

The answer charged that the ordinance relied on by plaintiff was unreasonable and oppressive and was an effort to take respondent's property without compensation and without due process of law, and contained, in support of this charge, a statement of facts, which may be condensed as follows:

1. That the embankment is not a menace or danger to public travel, but the crossings over it are safer and more advantageous to the public than they would be if flush with the street.

2. That it owns its right of way and has operated its road, as now constructed upon the embankment, for twenty-nine years; that the greater portion of the grade complained of was made and used at a time when the limits of the city did not embrace it and when there were no streets across it; that afterwards the corporate limits had been so enlarged as to include it and streets then extended across it as it now stands, since which time it has used its track as constructed with the knowledge, acquiescence, direction and consent of the city.

3. That a compliance with plaintiff's demand would require an expenditure of more than fifty thousand dollars for the actual work, and, in addition, respondent's traffic over its road would be suspended or seriously embarrassed and delayed, causing much more loss, the right of way being too narrow to enable respondent to so reduce its grade without suspending entirely all traffic over its track.

4. That compliance with the ordinance is impracticable, if not impossible, because (a) the grades of the streets are so different from each other (the difference being specified in the answer) that the track, if reduced to the grade of each crossing, instead of being reasonably safe and level, would form a series of undulations or alternating sags and elevations, rendering the operation of trains over it dangerous, if not impossible; (b) the proper construction of the crossing and grading of the street thereat would, in a manner specified, throw the surface water collecting in the streets, and heretofore passing along the gutters in other directions, upon the roadbed making it a channel or sluiceway for the rain and storm waters and rendering it unstable, insecure and dangerous to life and property, the only means of preventing which would be the construction by respondent of a sewer, of the character designated in the answer, two miles in length, at a cost of sixty thousand dollars.

5. That defendant owns its right of way, fenced from adjoining property and abutting upon each side of the several streets, and that the proposed action of the city, is an attempt to regrade its streets, the consequence of which would be. to take and damage respondent's said abutting property without compensation.

6. That the ordinance denies to respondent the equal protection of the law, in that other named railroad companies are permitted, without hindrance or molestation by the city, to operate their trains upon embankments intersecting streets, which embankments are as high and higher than that of respondent, and the city has singled out defendant to compel it to lower its grade when it allows every other railroad in the city to maintain tracks across public traveled streets where the embankment is higher than that of respondent.

7. That respondent's road south of that part involved in this action is also upon an embankment, crossed by public streets, and that, should it be required to lower its grade at the crossings now in controversy, the city would hereafter require it to take like action at the other crossings, and in such event the grade north of the Texas & Pacific Railroad, to be established in this suit, would not correspond with the new grade which the city will require to be established south thereof.

8. That the city has an adequate remedy for the evil complained of under another ordinance, which is set forth, and which provides, in substance, that railroad companies having tracks in the city of Dallas shall raise or lower the grade of same when required by the city council, and imposes penalties for a failure to comply after a prescribed notice, and also authorizes the city to make the change and maintain suits against the companies for the expense thereof.

The plaintiff excepted generally and specially to this answer, the special exceptions numbers 1 to 10 inclusive applying respectively to parts of the answer as constituting no obstacle to the exercise of the police power by the city as follows: The first, second, third and fourth exceptions, to the allegations as to the establishment and operation of the road before the city limits included it and the subsequent extension of such limits and of the streets across the road, and the existence of the present crossings with the knowledge and acquiescence of the city; fifth, to the averments of inconvenience and expense to defendant in complying with the ordinance; sixth, to the charge of unreasonableness against an ordinance passed in the exercise of express and specific power from the Legislature; seventh, to the averments of damage to respondent's abutting property; eighth, to the allegations of a denial of the equal protection of the law, for failure to show wherein there was such denial; ninth, to the allegation as to the embankment south of the Texas & Pacific Railroad and as to plaintiff's future action with respect thereto; tenth, to the allegations setting up the penal ordinance as an adequate remedy.

At the trial in the District Court the respondent's exceptions to the petition were overruled and plaintiff's special exceptions to the answer

were presented seriatim and sustained, and the general demurrer was presented and sustained, and, as respondent declined to amend, the entire answer was stricken out and judgment was entered upon the allegations in the petition awarding the mandamus as prayed for.

1. Do provisions of the charter and of the ordinance, on which the suit is founded, apply to railroad crossings existing before their adoption? Section 113 of the charter is the one specially relied on as supplying authority and we may confine our attention to it. The most natural application of the language of its opening sentence: "To direct and control the *laying and construction* of railroad tracks," etc., is to the original laying and construction, and power to require changes in the position of tracks already existing is not here clearly expressed. The further language of this sentence pursues the same thought, and if the question, whether or not power is conferred on the city council to require a change in the location of tracks previously laid, depended on this sentence alone, there would be difficulty in answering it affirmatively. But the second sentence removes the difficulty by conferring power "to require railway companies of all kinds to construct at their own expense such bridges, turnouts, culverts, crossings and other things, as the city council may deem necessary." This provision is clearly designed to grant to the council that police power usually conferred upon such bodies over crossings and like subjects. A street and a railroad track may cross each other upon the same surface, or one may pass above or below the other by means of a bridge, or viaduct, or tunnel. The crossing in contact at the same surface may be upon an embankment, or the street and the track may occupy the same level. The charter, in conferring power to require the construction of such "bridges, crossings, and other things, as the city council may deem necessary," expressly commits to that body authority and discretion to determine the character and construction of crossings and other things incident thereto, so far as this involves only a legitimate and proper exercise of the ordinary police power over such subjects. The adoption of the ordinance was a plain attempt to exercise the police power and no other; and to so apply it as to remedy what was thought to be an evil existing in the condition of the street crossings. The rule that legislative acts are not to be construed as acting retrospectively unless the intention that they should do so clearly appears, has no application. The proper operation of such legislation as this is wholly prospective, in that it seeks to remedy, for the future, evils requiring correction which have already grown up. It is merely the exercise of the power subject to which all persons use the public highways for their own purposes, to so regulate such use as to secure the rights therein of the people generally and protect them in the safe and convenient enjoyment thereof. The power exists at all times in the Legislature and in those inferior governmental bodies to whom it may be properly committed, and its proper exercise is unrestricted by the mere previous existence of property rights. Therefore the construc-

tion of the language of such a measure is not controlled by the principle of construction invoked by respondent. Chicago B. & Q. Ry. Co. v. Chicago, 166 U. S., 252-4. The language of the charter applies to railroads of all kinds, and there is nothing either in it or in the nature of the power to restrict its operation to railroads to be thereafter constructed. The ordinance is equally plain.

2. To the contention that it appears from the petition (a) that the work of reducing the track at the crossings to the level of the streets should be controlled by section 158 of the charter and the expense thereof shared by the city and respondent, as provided by that section; and (b) that the reduction of its embankment, at the expense of respondent, would be a taking or damaging of its property without compensation, the same answer may be made, which is, that the suit of the city is not an attempt to assert either the power of taxation by local assessment, as given in section 158, nor the power of eminent domain, but is an assertion of the police power over crossings the validity of which must be tested by the principles applicable to that power. Section 158 was intended to confer upon the city the power to improve its streets by the species of special taxation for local improvements defined therein. It does not limit nor detract from the police power vested in the city council to regulate, in any way in which that power may be legitimately exercised, the use of the streets by railways at crossings. Lentz v. City of Dallas, 96 Texas, 265, and authorities cited. Nor does the limitation upon the power of eminent domain, that property shall not be taken or damaged for public use without adequate compensation, of itself, impose any restriction upon the proper employment of the police power upon any subject lying within its sphere of operation. The question in all such cases is not merely whether or not property is damaged or loss inflicted through the exercise of the power of the government to safeguard the lives and limbs of its citizens, but whether or not the action taken or attempted falls within the legitimate scope, and is a lawful exercise of that power, which question will be discussed later. It can not be seen from the allegations of the petition alone that the action taken by the city council exceeds its power over such subjects.

3. The complaint that the plaintiff seeks to compel the removal of the embankments, not only at the crossings, but between them, is not sustained by the prayer in the petition. The plaintiff concerns itself only with the condition of the track at crossings, leaving to respondent to make such adjustment of the remainder of its roadbed as may be made necessary by a compliance with the demand made upon it. The court can, however, see from the facts stated in the petition that, if the track should be reduced at the crossings, as demanded, it would become necessary to the preservation and practical operation of the road that the rest of the embankment be correspondingly reduced, and that this would in all probability result, practically, in a complete change in the grade of respondent's roadbed throughout the distance mentioned in the petition.

If this fact alone would constitute a bar to the proposed action, it would, we think, follow that the general demurrer is good. But we do not think such is necessarily the case. This is only one fact, to be considered in connection with others, in determining whether or not reasonable and just occasion exists to sustain the demand of the city for the change of crossings. If that question be determined in its favor, it has a right to require the change, which would not be defeated by the necessity for other incidental alterations thereby made necessary in respondent's roadbed.

4. The petition alleges the height of the embankment above the street at each crossing, and this, with the demand that the crossings be made level, gave the defendant sufficient information as to the action required of it.

We thus reach the conclusion that the propositions urged by respondent in support of its general and special exceptions should not be sustained, and this brings us to the rulings of the court upon exceptions to its answer.

5. The contention is renewed in connection with the allegations of the answer that the facts stated therein show that the action sought by the city would constitute a taking and damaging of its property without compensation and without due process of law. That compensation is not required to be made for such loss as is occasioned by a proper exercise of the police power has already been stated. It is equally true that the infliction of such loss is not a taking without due process of law. The exercise of the police power upon subjects lying within its scope, in a proper and lawful manner, is due process of law. The distinction between these powers may now be elaborated by reference to a few of the authorities. In Railway Co. v. Chicago, supra, this language is used by Justice Harlan:

"The plaintiff in error took its charter subject to the power of the State to provide for the safety of the public, in so far as the safety of the lives and persons of the people were involved in the operation of the railroad. The company laid its tracks subject to the condition necessarily implied that their use could be so regulated by competent authority as to insure the public safety. And as all property, whether owned by private persons or by corporations, is held subject to the authority of the State to regulate its use in such manner as not to unnecessarily endanger the lives and the personal safety of the people, it is not a condition of the exercise of that authority that the State shall indemnify the owners of property for the damage or injury resulting from its exercise. Property thus damaged or injured is not, within the meaning of the Constitution, taken for public use, nor is the owner deprived of it without due process of law. The requirement that compensation be made for private property taken for public use imposes no restriction upon the inherent power of the State by reasonable regulations to protect the lives and secure the safety of the people."

In New York & N. E. Railroad Co. v. Bristol, 151 U. S., 556, it was

held that a railroad company could by the proper proceedings be required, at great expense to itself, to take up its track where it crossed a highway at grade and construct another crossing not at grade when the public safety demanded the change. This doctrine is sustained by many other authorities. Elliott on Railroads, sec. 1109, and authorities cited. ·

There is some conflict among the authorities as to what a railroad com-. pany may be required to do at its own expense in the construction of crossings, but the weight of authority sustains the views expressed by Mr. Justice Harlan, and such is the position of this court. Gulf C. & S. F. Ry. Co. v. Milam County, 90 Texas, 357; Gulf C. & S. F. Ry. Co. v. Rowland, 70 Texas, 303.

The conflicting cases have arisen when new streets or other highways were being opened across existing railroads, and the question was as to the extent to which compensation must be made to the railway companies: All of the courts agree that the companies are not entitled to be paid the expense of doing those things which may properly be required of them by virtue of the police power to secure the safety of persons using the crossings, but differ as to what things are within that category. In this case the streets are already established, properly we must assume, across the railroad, and there is no effort to apply the power of eminent domain. The existing crossings, as the city contends, are so dangerous to life and so inconvenient to travel as to require that the proposed changes be made. In the cases relied on by respondent no such condition had arisen and they are therefore not authority upon the question under consideration, which is as to the competency of the police power to require the correction of an evil demanded by the public welfare.

Another case (City of Seattle v. Columbia & P. S. Ry. Co., 33 Pac. Rep., 1048), so much relied on by respondent, may be distinguished in the same way. The railway had lawfully acquired the right to construct and had constructed its track along a street of the city of Seattle, and its property, including its track, had been destroyed by fire, its franchise to occupy the street remaining. It began rebuilding its track when it encountered a raised cross street which had been elevated by the city in regrading its streets, so that the track could not be built across it upon the grade which it had formerly occupied, and the controversy arose over the right of the railway company to cut through the regraded streets. The court held that the action of the city amounted to a destruction of the company's franchise to occupy the street as formerly and that this could not be done without compensation. The right of the city to grade its streets was admitted, but it was said that the right "was not an absolute one, to be exercised at its option, regardless of its effect upon others, but its power must be reasonably exercised with reference to the rights of parties interested." This doctrine has its application, as will presently be seen, to the question as to the validity of the attempted exercise of its police power by the city in this case, but the decision is not authority for the broad proposition, that, although the situation be such that the de-

mand of the city is, under all the facts and circumstances, a necessary or a just and reasonable requirement to promote the safety of the public, the fact that the enforcement of it will inflict pecuniary loss on the respondent is a complete bar.   There was no contention in that case that the railroad company was maintaining a crossing dangerous to persons using it, and the opinion had no reference to the question before us

The power of the Legislature to regulate the use of property and the carrying on of business so as to protect the health, safety and comfort of citizens is recognized by all of the authorities, and its use is not to be defeated by the mere fact that loss or expense may be imposed upon the owners of the property or business.   Fertilizing Company v. Hyde Park, 97 U. S., 659.   The numerous cases on the subject of nuisances in this court and elsewhere are but instances of the use of this power. So the decisive question, as we have said before, is whether or not the action of the city is sustained by the existence of facts affecting the public welfare sufficient to justify such an application of the police power, and the answer to this question determines the one made by respondent as to whether or not the action of the city constitutes due process of law.

6.   The power is not an arbitrary one, but has its limitations.   It is commensurate with, but does not exceed the duty to provide for the real needs of the people in their health, safety, comfort and convenience, as consistently as may be with private property rights.   As those needs are extensive, various and indefinite, the power to deal with them is likewise broad, indefinite and impracticable of precise definition or limitation.   But, as the citizen can not be deprived of his property without due process of law, and as a privation by force of the police power fulfills this requirement only when the power is exercised for the purpose of accomplishing and in a manner appropriate to the accomplishment of the purpose for which it exists, it may often become necessary for courts, having proper regard to the constitutional safeguard referred to in favor of the citizen, to inquire as to the existence of the facts upon which a given exercise of the power rests, and into the manner of its exercise; and if there has been an invasion of property rights, under the guise of this power, without justifying occasion, or in an unreasonable, arbitrary and oppressive way, to give to the injured party that protection which the Constitution secures.   It is therefore not true, as urged by plaintiff, that the judgment of the legislative body concludes all inquiry as to the existence of facts essential to support the assertion of such a power as that now in question.   If this were true, it would always be within legislative power to disregard the constitutional provisions giving protection to the individual.   The authorities are practically in accord upon the subject. A few quotations will indicate the scope of the inquiry as far as it can be abstractly defined.   In Dobbins v. Los Angeles, 195 U. S., 223, 25 Sup. Ct. Rep., 20, the law is thus stated by the Supreme Court of the United States:

"It may be admitted that every intendment is to be made in favor of

the lawfulness of the exercise of municipal power, making regulations to promote the public health and safety, and that it is not the province of courts, except in clear cases, to interfere with the exercise of the power reposed by law in municipal corporations for the protection of local rights and the health and welfare of the people in the community. But notwithstanding this general rule of the law, it is now thoroughly well settled by decisions of this court that municipal by-laws and ordinances, and even legislative enactments undertaking to regulate useful business enterprises, are subject to investigation in the courts with a view to determining whether the law or ordinance is a lawful exercise of the police power, or whether, under the guise of enforcing police regulations, there has been an unwarranted and arbitrary interference with the constitutional rights to carry on a lawful business, to make contracts, or to use and enjoy property." In Lawton v. Stelle, 152 U. S., 133-137, 38 L. Ed., 385-388, 14 Sup. Ct. Rep., 499-501, Mr. Justice Brown, speaking for the court, said upon this subject: "To justify the State in thus interposing its authority in behalf of the public it must appear, first, that the interests of the public generally, as distinguished from those of a particular class, require such interference; and, second, that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals. The Legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private business or impose unusual and unnecessary restrictions upon lawful occupations. In other words, its determination as to what is a proper exercise of its police powers is not final or conclusive, but is subject to the supervision of the courts."

And again, in Holden v. Hardy, 169 U. S., 366, 42 L. Ed., 780, 18 Sup. Ct. Rep., 383, the same justice, again speaking for the court, said: "The question in each case is whether the Legislature had adopted the statute in exercise of a reasonable discretion, or whether its action be a mere excuse for an unjust discrimination, or the oppression or spoliation of a particular class." After quoting other authorities to the same effect, the court uses this language: "But the exercise of the police power is subject to judicial review, and property rights can not be wrongfully destroyed by arbitrary enactment. It was averred that the works would be so constructed as not to interfere with the health or safety of the people. No reasonable explanation for the arbitrary exercise of power in the case is suggested."

In the case before us we have only a municipal ordinance to deal with, and it is the well established doctrine in this and other courts that the question as to the reasonableness or unreasonableness of such ordinances is open to inquiry in the courts. Milliken v. City Council, 54 Texas, 388; Mills v. Railway, 94 Texas, 247. An exception to this rule is that the reasonableness vel non of an ordinance can not be thus questioned if it be expressly authorized by the Legislature, and be a regulation which the Legislature itself has power to adopt and enforce. But aside from the

fact that there are limitations upon the power of the Legislature itself over such subjects as that before us, this ordinance is not, in our opinion, within the exception. As we have already pointed out, the crossings of streets and railroads may be variously arranged, and the kinds of crossings to be adopted in particular situations is, in Dallas, committed to the discretion of the city council. The Legislature has not, itself, determined the character of any one to be adopted at any place. The full police power over the subject is granted to the city council, but to be used in subordination to the limitations upon such a power when vested in such a body, one of which is that its exercise must be reasonable. Even if the power claimed by the city should be derived from the first sentence of section 113 of the charter, the result would not be different, because the Legislature has not said what manner of "laying and construction will interfere as little as possible with the ordinary travel and use of the streets," but has left that, also, to the discretion of the city council; and it is the judgment of that body alone that the character of crossing defined by the ordinance should be required, which leaves the ordinance as open as others to examination on a charge of unreasonableness.

The position is taken that the question as to reasonableness is one of law for the court and not of fact to be decided on a hearing of evidence, from which the conclusion is urged that the trial court, when hearing exceptions, properly held the ordinance to be valid. It is doubtless true that the question is one of law. The reasonableness or unreasonableness of many ordinances will appear on their faces, and the court may, upon mere inspection, pronounce them to be valid or invalid." In others the question may depend upon their operation upon particular persons or conditions of fact which can not be known to the court until made to appear by evidence. Their effect may be just and reasonable in general but, in particular instances, may be arbitrary and oppressive to the extent of invading fundamental rights. Evison v. Chicago St. P. M. & O. Ry. Co., 11 Law. Rep. Ann., 436; State of New Jersey v. Trenton Horse R. Co., 11 Law. Rep. Ann., 412. In such cases the court can only determine as to the validity or invalidity of the ordinance when the facts upon which the question depends are established; and, if they are in dispute, they are to be determined like other matters of fact, the question of validity still being one of law for the court to decide. When the case is tried by a jury the court is of course to instruct as to the law applicable to the differing states of fact which the evidence may tend to establish as in other cases. The court in this case, looking at the ordinance alone, could not say that it is void. As was said by the Supreme Court of Minnesota, in the Evison case, supra: "Much must be left to the judgment and discretion of the city council, and when they have exercised their judgment and discretion in passing an ordinance it is prima facie valid, and, to justify a court in setting aside their action, its unreasonableness, and the want of necessity for it as a measure for the protection of life and prop-

erty, must be clear, manifest and undoubted, so as to amount, not to a fair exercise, but an abuse of discretion, or a mere arbitrary exercise of the power of the council. Citing Knobloch v. Chicago M. & St. P. R. Co., 31 Minn., 402. But, where it clearly and manifestly appears that the ordinance is unnecessary and unreasonable, the courts have the undoubted right to declare it void."

The ordinance being prima facie a valid one, it was incumbent upon the respondent to show the contrary by facts stated in its pleading. This it undertook to do, and the question upon demurrer to the answer was whether or not the ordinance in its operation upon respondent when judged by the facts pleaded was unreasonable and arbitrary, and we are of the opinion that it was decided incorrectly. The court doubtless acted upon the opinion that the respondent could not thus question the action of the city council, and the Court of Civil Appeals took the same view, which we have held to be an erroneous one. The authorities relied on do not sustain the position. In the cases in which such exercise of the police power has been sustained, the parties were heard by the courts when they alleged facts to show that the measures taken against them were unreasonable, arbitrary and oppressive, and the actions brought in question have been upheld only when the parties attacking them failed to sustain their charges by the evidence. Thus in the Bristol case, supra, while the action of the authorities in requiring an abolition of the grade crossing was sustained, this significant language was used: "The objection is not that a hearing was not required and accorded, which it could not well be in view of the protracted proceedings before the commissioners and the Superior Court and the review in the Supreme Court, but that the scope of inquiry was not as broad as the statute should have allowed." The opinion then carefully examines this contention and finds that the issues which had been tried were broad enough to embrace every fact essential to sustain the assertion of power in question, among which issues were these: "Whether or not the grade crossing ordered by the commissioners to be removed was in fact a dangerous one; and whether or not the company's financial condition was such as to warrant the order." So in the Fertilizing Company case, a hearing was given to it by the court upon its application for an injunction to restrain the action being taken against it by the municipal authorities and the facts sustaining the propriety of such action ascertained before it was adjudged to be a lawful exercise of power. A like hearing was ordered in Dobbins v. Los Angeles, supra, and in Chicago M. & St. P. Ry. Co. v. Minnesota, 134 U. S., 418; and in all of the other cases cited in which the attempted exercise of the police power was challenged by allegations of facts showing unjust and arbitrary action a hearing upon the facts was either had or ordered by the appellate court.

7. Coming to the case made by the answer, we see that it puts in issue the very fact the existence of which is assumed in the effort to abolish these crossings, which is the existence of danger to the public caused by them and to be remedied by the proposed change. Some of its

allegations are general, but not more so than those of the petition to which they are a reply. It is said in argument that the court may know that there is danger to travelers in the use of the present crossings, and so we may; but, without knowing the facts of the situation, we can not know the extent of the danger, nor that the crossings are more dangerous than those to be substituted for them. This is the precise issue the answer makes. Much less can we know that the difference in the advantages of the two characters of crossings will be so great in favor of those contended for by plaintiff as to justify the imposition of such a burden upon respondent as the allegations show will result from the making of the change. If it be true that there is to be no benefit to the public from the proposed change, or a benefit which is inconsiderable when compared with the detriment to be suffered by the respondent, who will say that it is just and reasonable to subject respondent to such expense and loss as is averred? The petition itself so couples together its allegations of danger with those of mere convenience as to leave it doubtful how far the consideration of each has weighed in determining the city's action. While the convenience of the public in the use of the streets is generally to be considered and promoted, it may well be that, in particular instances, it should not be allowed to outweigh, in the adoption of such measures as that under consideration, a great and disproportionate injury to be inflicted on private interests in advancing it. When it is found that a proposed action is to be fraught with such consequences as those averred in the answer, a public exigency correspondingly great and urgent should be required in its support. In considering this phase of the case, at present, we can only treat all of the relevant facts well pleaded as true, and announce our opinion that they are sufficient to show the ordinance relied on to be unreasonable and arbitrary in its operation against respondent, and to entitle it to a hearing on the evidence.

8. There is another feature of the answer which, in our opinion, contains a good defense, and it consists in the showing of the impracticability of complying with the ordinance. The ordinance is not intended to destroy the road nor to render impracticable its efficient operation. The rule declared by it as to crossings is general, and if obedience to it is, in any instance, not reasonably practicable, not only should it be held to be unreasonable in such operation, but the intention that it should so operate ought not to be imputed to the city council. If it be true, as urged by counsel, that upon sufficiently urgent public necessity the owner of a railroad track may be required to entirely remove it, the answer is that no such requirement has been made, the ordinance contemplating that the road shall remain where it is and be operated efficiently. Hence the action of the city should not be regarded as intended to cripple respondent so that its duties can not be properly performed. Besides, a court will hardly grant a mandamus to require the doing of that which is shown to be impracticable.

9. From what has been said it follows that we are of the opinion that

the general demurrer and special exceptions 1, 2, 3, 4, 5, 6 and 9 should have been overruled. The facts to which these special exceptions relate were properly stated as affecting in greater or less degree the question as to the unreasonableness of the ordinance.

10. The seventh, eighth and tenth special exceptions were properly sustained for reasons which we will briefly state. (1) The allegations concerning the damage to respondent's abutting right of way are wholly irrelevant to the inquiry. Respondent holds its estate in its right of way subject to such effects as may follow from proper requirements as to crossings and its existence has no influence on the validity of the ordinance. (2) It is the ordinance alone which the answer alleges denies to respondent the equal protection of the law. It applies to all railroads and. on its face, shows no discrimination. No facts are stated showing that it is so enforced as to produce the result complained of, the allegations as to the singling out of respondent being too indefinite to show any real discrimination and probably having no support beyond the fact that respondent was first sued. (3) The ordinance of 1898 relied on as giving another adequate remedy can not be regarded as having that effect. The duty sought to be enforced is that sought to be imposed by the last ordinance, that is, that respondent shall itself construct the crossings. The former ordinance only authorizing prosecutions or the doing of the work by the city. It furnishes no specific remedy to enforce the duty prescribed by the last ordinance, which, if valid, is properly enforcible by mandamus. Besides, the validity of the former ordinance is open to the same attacks as that made upon the latter, and to others, viz., that it seeks to give power to the city to tear up and disturb railroad tracks whenever the city council may require a lowering or elevating thereof. It is unnecessary to pursue this subject further, as it is apparent that there is not a plain, adequate, certain and speedy remedy given by the ordinance.

For the error in sustaining exceptions to the answer, the judgment is reversed and the cause remanded.

*Reversed and remanded.*