# DECEMBER, 1914.

ST. LOUIS SOUTHWESTERN RAILWAY COMPANY OF TEXAS V.
THOMAS A. GRIFFIN.

No. 2585.  Decided December 16, 1914.

1.—Legislative Power—Constitutional Law.

If legislative power to enact a statute can be sustained by reasonably fair construction, even a serious doubt of that power must be resolved in favor of the validity of the law. But while the courts can not frame or change laws, or mould them by construction, they are charged with the duty to enforce the law, and to annul any statute enacted by the Legislature which is clearly in violation of the constitutional rights of any person, natural or corporate. (P. 483.)

2.—Same—Liberty of Contract for Service.

The citizen has the liberty of contract as a natural right which is beyond the power of the government to take from him. The liberty to make contracts includes the corresponding right to refuse to accept a contract. An employe entering the service of a railway company for an indefinite time has the right to quit the service at any time without cause or notice to his employer. The latter has the corresponding right to discharge him at any time without cause or notice. The rights of the parties are mutual. East Line & R. R. Co. v. Scott, 72 Texas, 75, followed. (P. 483.)

3.—Same—Cause of Discharge—Blacklisting Law.

The Act of March 20, 1909, Laws, 31st Leg., p. 160 (Rev. Stats., 1911, art. 594), requiring corporations to give to a discharged employe on demand a

statement of the "true cause" of his discharge necessarily implies that there must have been a cause to justify the dismissal, and is destructive of the mutual right to dissolve the relation of master and servant at will. This was a denial of the equal protection of the law secured by the Fourteenth Amendment to the Constitution of the United States. (P. 484.)

#### 4.—Same.

It seems that the ruling in St. Louis S. W. Ry. Co. of Texas v. Hixon, 104 Texas, 267, that the statute required the giving of a statement merely of the cause operating on the mind of the officer who discharged the employe, is in conflict with the rulings made by the trial and appellate courts in this case which denied to the employer the right to determine the efficiency of the servant, by permitting the latter to recover on proof that he was not, in fact, inefficient as stated by the employer. But upon either construction the statute was in violation of the employer's right to equal protection of the law. (P. 484.)

#### 5.—Liberty of Speech.

The liberty of speech secured by article 1, section 8, of the Constitution, includes the corresponding right to be silent. A statute which compels a corporation, under penalty of a heavy forfeiture, to engage in correspondence with its employes as to the reasons for their discharge, is in violation of its constitutional liberty to decline to write on that subject. Atchison, T. & S. F. Ry. Co. v. Brown, 80 Kan., 312, and Wallace v. Georgia C. & N. Ry. Co., 94 Ga., 732, followed. (P. 485.)

#### 6.—Discrimination in Employment—Participation in Strike.

The employer has a constitutional right to determine for himself the matter of employing any person or discharging any already employed. The soundness or mere whimsicalness of his reason does not affect the right. A statute making a corporation liable to a penalty if it "shall discriminate against any person on account of his having participated in a strike" is invalid. (Pp. 486, 487.)

#### 7.—Blacklisting—Constitutional Law.

The second, third, fourth and fifth paragraphs of article 594, Rev. Stats., 1911 (Blacklisting Law), are unconstitutional as denying to the employer his natural right to speak or be silent and his constitutional right to liberty of contract. The second and fourth paragraphs are also unconstitutional, because they invest the discharged employe with an inquisitorial authority over his employer's private correspondence and conversations which could not be enforced, if granted to any officer, except in a legal proceeding. (P. 487.)

#### 8.—Same—Limits of Police Power.

The Blacklisting Law (Rev. Stats., 1911, art. 594) can not be sustained as a legitimate exercise of the police power of the State, the subject of legislation being a purely personal matter between employer and employe, which does not directly affect the public in health, safety, comfort, convenience or otherwise. The police power and its limits considered and defined. (Pp. 487-489.)

Error to the Court of Civil Appeals, Fourth District, in an appeal from Dallas County.

Griffin sued the railway company and recovered judgment. This was affirmed on appeal by defendant, who thereupon obtained writ of error.

*E. B. Perkins, Daniel Upthegrove,* and *J. E. Gilbert,* for plaintiff in error.—A statute which undertakes to make it the duty of a railway company to furnish a service letter to a discharged employee stating the true cause of his discharge, and subjecting it to fine or imprisonment for failure to do so, is in violation of article 1, section 8 of the Consti-

tution of this State and of the general private right of silence. Liberty of speech and of writing is guaranteed to every person by the Constitution of this State, and incident thereto is the correlative liberty of silence, which is no less important or less sacred.

Inasmuch as appellee's employment was of a private character and embraced a private contract that can not be interfered with by the Legislature, the Legislature has no right to prescribe the kind of service letter or the contents of same which shall be furnished appellee at the termination of his employment, and any attempt of the Legislature to do so is in violation of the Fifth and Fourteenth Amendments to the Constitution of the United States, which provide that no person shall be deprived of life, liberty or property without due process of law, and of subdivision 1, section 10, article 1 of the Constitution of the United States, which provides that no State shall pass an ex post facto law or law impairing the obligation of contracts, and of section 19, article 1, of the Constitution of the State of Texas, and of section 16, article 1, of said Constitution, which provide that no citizen of this State shall be deprived of life, liberty, property, privileges or immunities except by due course of law of the land, and no law shall be passed abridging the obligation of contracts.

Plaintiff's right to sell his labor and the railway company's to purchase same, and likewise his right to quit the service of the company at any time he desired to do so, and the right of the railway company to discharge him with or without cause is a part of the liberty guaranteed to every person by the State and Federal Constitutions, and that liberty can not be limited or in any way interfered with by the Legislature, and for the Legislature to attempt to prescribe that after his discharge the railway company shall be forced to give a service letter and be subject to fine and imprisonment for failure to do so is a denial of the rights protected by the Fifth and Fourteenth Amendments, and subdivision 1, section 10, article 1, of the Constitution of the United States, and of section 19, article 1, and section 16, article 1, of the Constitution of the State of Texas.

The blacklisting law can not be sustained on the theory that the State had the right to enact same in the exercise of the police powers of the State, because such police powers can only relate to safety, health, morals and general welfare of the public.

Said Act of the Legislature under which said action is brought is unconstitutional, in that it denies to appellee equal protection of the law, because said Act only applies to "any corporation or receiver of same," and does not include persons, firms, joint stock companies, association of persons or municipal corporations, and therefore violates the provision of section 3, article 1, of the Constitution of the State of Texas, and the Fourteenth Amendment of the Constitution of the United States, which provides that no State shall deny to any person in its jurisdiction the equal protection of the laws.

The court erred in overruling appellant's demurrers to appellee's petition and holding that said Act of the Legislature did not violate section

9 of the Bill of Rights of the Constitution of the State of Texas, which guarantees that the people shall be secure from all unreasonable seizures and searches, and did not violate the protection extended citizens of the State and of the United States by the Fourteenth Amendment of the Constitution of the United States.

A railway company has the absolute right to determine the qualifications of its section foremen, and having discharged appellee for inability to surface and line track and properly distribute his work, and this being the statement made in the service letter requested by him, as shown in appellee's petition, it is a violation of each of the above named articles of the State and Federal Constitutions for the court to permit appellee to have the truth or falsity of such statement submitted to the jury.

Authorities under foregoing propositions:   Fifth and Fourteenth Amendments to Constitution of United States, subdivision 1, section 10, article 1, and Fourth and First Amendments to Constitution of the United States, section 19, article 1, and section 16, article 1, and section 8, article 1, of the Constitution of the State of Texas; St. Louis S. W. Ry. Co. v. Hixon, 104 Texas, 267; St. L. & S. F. Ry. Co. v. Inman, 137 S. W., 1153; Ex parte Harrison (Mo.), 110 S. W., 709; Wallace v. Railway Co., 94 Ga., 732; Pavesich v. New England Life Ins. Co., 122 Ga., 190; Ex parte Neill, 32 Texas Crim. Rep., 275; A., T. & S. F. Ry. Co. v. Brown (Kan.), 102 Pac., 459; Ex parte Brown, 38 Texas Crim. Rep., 95, 70 Am. St., 743; Mugler v. Kansas, 123 U. S., 661; State v. Gilman, 33 W. Va., 146; Coffeeville V. B. & T. Co. v. Perry, 69 Kan., 66 L. R. A., 185; State v. C., M. & S. P. Ry. Co., 88 L. R. A., 672; Lochner v. New York, 198 U. S., 45; I. C. C. v. C. & G. W. Ry. Co., 209 U. S., 118; Adair v. United States, 208 U. S., 172; Cotting v. Goddard, 183 U. S., 79; G., C. & S. F. Ry. Co. v. Ellis, 165 U. S., 150; People v. Gillson, 109 N. Y., 389; State v. Loomis, 115 Mo., 307; Lawton v. Steele, 152 U. S., 133; Plessy v. Ferguson, 163 U. S., 537; W. M. & P. R. R. Co. v. Jacobson, 179 U. S., 287; Boyd v. United States, 116 U. S., 616; Dupree v. State, 102 Texas, 455; 14 Am. & Eng. Ency. of Law, 69.

*Wm. T. Strange* and *Wm. H. Clark,* for defendant in error.—It is for the Legislature of Texas to define the public policy of our State in respect to public service corporations, including railroads, life insurance companies, banks and other like public service corporations, and to impose such regulation or conditions on the transactions of the domestic business, agencies and instrumentalities of such corporations as the Legislature may deem best for the public.

The contention that the verdict and judgment herein are not due process of law and that the blacklisting statute is repugnant to the Constitution is simply an abuse of the English language, in the light of the statutes of Texas regulating and controlling railroads, insurance companies, banks and other public service corporations, and the decisions of this court and of the Supreme Court of the United States, holding that such State regulation of these public service corporations is within

the power of the State, towit: Insurance Co. v. Chowning, 86 Texas, 654, 15 Texas Civ. App., 178; Fidelity & C. Co. v. Allibone, 90 Texas, 660; N. Y. Life Ins. Co. v. Orlopp, 25 Texas Civ. App., 284; Insurance Co. v. Walden, 26 S. W., 1012; Clark v. Finley, 93 Texas, 180; Brown v. State, 54 Texas Crim., 121; Northern Texas Traction Co. v. Danforth, 53 Texas Civ. App., 419; Fidelity Life Ins. Co. v. Mettler, 185 U. S., 308; A., T. & S. F. Ry. Co. v. Matthews, 174 U. S., 96; Railway Co. v. Paul Warren, 181 U. S., 73; Waters-Pierce Oil Co. v. Texas, 177 U. S., 28; Tullis v. Railway Co., 175 U. S., 348; Blake v. McClung, 172 U. S., 239; Reagan v. Farmers Loan & Trust Co., 154 U. S., 362, 413; Orient Ins. Co. v. Daggs, 172 U. S., 557; Munn v. Illinois, 94 U. S., 113; Paul v. Virginia, 8 Wall. (U. S.), 168; Bank of Augusta v. Earle, 13 Peters (U. S.), 519; Merchants Life Assn. v. Yoakum, 98 Fed., 251.

Mr. Chief Justice BROWN delivered the opinion of the court.

We copy from the opinion of Justice Moursund the following statement of the facts found by the Court of Civil Appeals of the Fourth District:

"Thomas A. Griffin, appellee, sued the St. Louis Southwestern Railway Company of Texas, appellant, to recover damages for its alleged failure and refusal to issue to him a true statement of the reasons why he was discharged by appellant, he having made demand for such statement under chapter 89, page 160, General Laws of Texas of 1909, commonly known as the 'Blacklisting Law.' On May 9, 1910, appellee was employed as a section foreman by appellant, and on July 18, 1910, was discharged, whereupon he made his demand for a statement in writing as to the cause of his discharge. Appellant issued a service letter as follows: 'This is to certify that Thomas A. Griffin has been employed in the capacity of section foreman at Renner on the St. Louis Southwestern Railway Company of Texas from May 9, 1910, to July 18, 1910.

" 'Discharged for not distributing work properly and inability to surface and line track.

" 'Previous record, March 25, 1910, to April 1, 1910, assistant extra gang foreman. Resigned. Service satisfactory.'

"Appellee alleged that this statement was false and malicious, that he previously had several years experience on section work and as section foreman, performing and directing said work, was capable, experienced and skilled therein; that he could and did distribute his work properly, and could and did surface and line track; that the real cause of his discharge was on account of a personal difference which he had on July 10, 1910, with appellant's general roadmaster, J. J. Hughes.

"Appellant attacked the constitutionality of the blacklisting law, both by demurrer and plea, and alleged that it in good faith attempted to comply with said statute and that the reasons stated in said service letter were the true reasons for appellee's discharge; that its assistant

roadmaster, in making the report on which said letter was based acted in good faith in an effort to perform his duty to appellant, and it would not be liable for a mistake in judgment made by its roadmaster.    Appellant further alleged that it did not make such letter public, but furnished it to appellee in compliance with said statute, at his request, and without any malice, ill-will or evil intent towards appellee; that it had the right to exercise and act upon its own judgment as to the competency of those employed as section foremen, and if a mistake should be made in the discharge of such employee it would not be liable to him; that it was required by law to keep its track in proper condition for the operation of its trains, and that it was necessary to employ careful and competent section foremen to keep the track in proper repair, and that other railroad companies had a like interest in keeping their tracks and roadbed in repair, and that such communication was privileged, and there being no malice, ill-will or evil intent shown, plaintiff could not recover.

"Defendant's exceptions were overruled, and upon trial the jury found that the statement furnished was false, and awarded plaintiff $500 damages.    Judgment was entered for said amount, from which defendants appealed."

There is no conflict in the evidence to the fact of the employment and discharge of Griffin.    The question presented to this court is the validity of a statute enacted by the Legislature as stated above, from which we copy the following provisions:

"Article  594.    *Discrimination.*—Either  or  any  of  the  following acts shall constitute discrimination against persons seeking employment:  .  .  .

"3.    Where any corporation, or receiver of the same, doing business in this State, or any agent or employee of such corporation or receiver, shall have discharged an employee, and such employee demands a statement in writing of the cause of his discharge, and such corporation, receiver, agent or employee thereof fails to furnish a true statement of the same to such discharged employee, within ten days after such demand, or where any corporation or receiver of the same, or any officer or agent of such corporation or receiver shall fail, within ten days after written demand for the same, to furnish to any employee voluntarily leaving the service of such corporation or receiver, a statement in writing that such employee did leave such service voluntarily, or where any corporation or receiver of the same, doing business within this State, shall fail to show in any statement under the provision of this title the number of years and months during which such employee was in the service of the said corporation or receiver in each and every separate capacity or position in which he was employed, and whether his services were satisfactory in each such capacity or not, or where any such corporation or receiver shall fail within ten days after written demand for the same to furnish to any such employee a true copy of the statement originally given to such employee for his use in case he shall have lost or is otherwise deprived of the use of the said original statement."    Rev. Stats., 1911, vol. 1, art. 594, sec. 3.

The Act gives no right of action to the employee for failure to furnish the "true statement," but provides that the State may sue for and recover a penalty of $1000 for each failure to comply with the law.

For the purpose of testing the correctness of the judgment of the Court of Civil Appeals in holding the Act of the Legislature valid, we must assume that the evidence was sufficient to sustain the claim that the statement of discharge furnished did not state a cause which was true in fact, but this does not concede that the statement of discharge furnished did not state truly the cause which operated upon the mind of the officer who discharged Griffin. We will first consider the validity of the statute relied upon by defendant in error, and if, by reasonably fair construction it appears that the Legislature was empowered to enact the law, this court will recognize it as valid—that is, a serious doubt of the power must be resolved in favor of the validity of the law. Lewis' Sutherland on Statutory Construction, section 82, states the rule thus:

"Every presumption is in favor of the validity of an Act of the Legislature, and all doubts are resolved in support of the Act. 'In determining the constitutionality of an Act of the Legislature, courts always presume in the first place that the Act is constitutional. They also presume that the Legislature acted with integrity, and with an honest purpose to keep within the restrictions and limitations laid down by the Constitution. The Legislature is a co-ordinate department of the government, invested with high and responsible duties, and it must be presumed that it has considered and discussed the constitutionality of all measures passed by it.' The unconstitutionality must be clear or the Act will be sustained."

It is true that all legislative power is by the Constitution vested in the Legislature, and the judicial department can not frame laws, nor change, nor mold them by construction. It is likewise true that the judicial power of the State is vested in the courts which are charged with the duty of enforcing the laws and with the duty to annul any law enacted by the Legislature which is clearly in violation of the constitutional rights of any person, natural or corporate, and with the same purpose with which the courts refrain from trespassing upon the privileges of the legislative power, they will, when necessary, exercise their power to prevent the destruction or impairment of rights vested in citizens or corporate bodies, by the unauthorized action of the Legislature.

The citizen has the liberty of contract as a natural right which is beyond the power of the government to take from him. The liberty to make contracts includes the corresponding right to refuse to accept a contract or to assume such liability as may be proposed. When Griffin entered the service of the railroad company for an indefinite time the law reserved to him the right to quit the service at any time without cause or notice to the employer. The railroad company had the corresponding right to discharge him at any time without cause or notice. The rights of the parties were mutual. East Line & R. R. Ry. Co. v.

Scott, 72 Texas, 75, 13 Am. St., 758, 10 S. W., 102.   In the case cited, the court said:

"It is very generally if not uniformly held, when the term of service is left to the discretion of either party, or the term left indefinite or determinable by either party, that either may put an end to it at will and so without cause.   Harper v. Hassard, 113 Mass., 187; Coffin v. Landes, 46 Pa. St., 431; Woods' Master and Servant, secs. 133, 136, and citations."

If the servant could quit without notice and the master could discharge him at will without notice, the effect of the statute in question would be to preserve the servant's unqualified right to leave the service without cause or notice, but to deny to the corporation the corresponding right to discharge without cause or notice.

The requirement that the corporation give to the discharged employee, on his demand, a statement of the *"true cause"* for his discharge, necessarily implies that there must have been a cause to justify the dismissal, else, how could the "true cause" be given?   The value of the contract to each party consisted largely in the mutual right to dissolve the relation of master and servant at will.   The destruction of that right in the corporation was a violation of its liberty of contract and a denial of the equal protection of the law in violation of this provision of the Fourteenth Amendment to the Constitution of the United States, "nor shall any State deprive any person of life, liberty or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

But the statute did not stop at the destruction of the corporation's right to *discharge* the employee without cause, but provided that in case the statement of cause should be refused, or if the cause stated was not "the true cause," the State might recover from the corporation a penalty of $1000.

But the legislators did not stop with that provision, for under the construction placed on the law by the Court of Civil Appeals the discharged employee could recover damages by proving that the cause stated was not true.   The proof in this case was that the person who discharged Griffin acted upon the report of another who had oversight of Griffin's work, and there was no controversy that he acted upon that report, but Griffin was permitted to prove that he was capable and did good work, which denied to the employer the right to determine the efficiency of the servant.

In St. Louis S. W. Ry. Co. of Texas v. Hixon, 104 Texas, 267, 137 S. W., 343, this court held that the law required a true statement of the fact which operated upon the mind of the officer or agent who discharged the employee, but did not require that the fact stated must have been true.   Under this most favorable construction, the law is no less in violation of the constitutional right of equal protection of the law as secured by the Fourteenth Amendment to the Constitution of the United States.

The eighth section of article 1 of the Constitution of this State is in this comprehensive and clear language:

"Every person shall be at liberty to speak, write or publish his opinions on any subject, being responsible for the abuse of that privilege; and no law shall ever be passed curtailing the liberty of speech or of the press. In prosecutions for the publication of papers, investigating and conduct of officers, or men in public capacity, or when the matter published is proper for public information, the truth thereof may be given in evidence. And in all indictments for libels, the jury shall have the right to determine the law and the facts, under the direction of the court, as in other cases."

The liberty to write or speak includes the corresponding right to be silent, and also the liberty to decline to write. Atchison, T. & S. F. Ry. Co. v. Brown, 80 Kan., 312, 133 Am. St., 213, 102 Pac., 259, 18 Ann. Cases, 346, 23 L. R. A. (N. S.), 217; Wallace v. Georgia C. & N. Ry. Co., 94 Ga., 732, 22 S. E., 579. To say that one can be compelled at the instance of another party to do what he has the constitutional liberty to do or not, is a contradiction that is not susceptible of reconciliation. In Wallace v. Railway Co., cited above, the Georgia court tersely and clearly covers the entire ground thus:

"A statute which undertakes to make it the duty of incorporated railroad, express, and telegraph companies to engage in correspondence of this sort with their discharged agents and employees, and which subjects them in each case to a heavy forfeiture, under the name of damages, for failing or refusing to do so, is violative of the general private right of silence enjoyed in this State by all persons, natural or artificial, from time immemorial, and is utterly void and of no effect. Liberty of speech and of writing is secured by the Constitution, and incident thereto is the correlative liberty of silence, not less important nor less sacred."

We find no authority to the contrary and argument could not add force to the reasoning of those courts. The cases cited are sufficient to require this court to declare the law in question void, but we believe that we should point out other grounds which demand the judgment of this court in support of our conclusion.

The Act of the Legislature under consideration violates that provision of the Constitution by many harsh requirements; we will point out some of them. This statute declares the corporation to be guilty of discrimination against the employee in the following instances, but we do not exhaust the harsh features of the law.

First. It confers upon the employee a right to recover damages if the corporation, upon his demand, should fail to give to him a statement of the *true cause* of his discharge, "or why his relationship to such company ceased." The corporation has the constitutional right to discharge without cause, and the Legislature can not destroy this right of contract.

Second. Where the employing corporation by any means, directly or indirectly, shall communicate to any other person or corporation any information in regard to the said employee who may seek employment

of such person or corporation, and upon demand of such employee shall fail within ten days thereafter to deliver to him a complete copy of such communication, if any written, and if not a true statement of it, whether it was done by sign or other means, if not in writing, and shall also give the names and addresses of all persons or corporations to whom such communication shall have been made. This is not a part of any proceeding at law, not even the act of an officer.

Third. When any such corporation shall have discharged an employee and such employee demands a statement in writing of the cause of his discharge, the corporation or its officers are required within ten days after the demand, to give a true statement of the cause for so discharging the employee. If the employee voluntarily leaves the service of the corporation, he may demand in writing from such corporation a statement that he did voluntarily leave such employment. The corporation is required in making a statement of the departure of his employee, whether voluntary or otherwise, to give the number of years and months during which the employee was in the service of the corporation, and state every capacity or position in which he was employed and whether his services were satisfactory in each capacity or not. And if the employee should lose or destroy his statement, then he has the right to demand of the corporation to make a true copy of the original statement and furnish it to him. We have found no precedent for this palpable disregard of the rights of corporations under the Constitution of the State.

Fourth. If any corporation or receiver doing business in this State, etc., shall have received any request, notice, or communication, if in writing or otherwise, from any person, etc., preventing or calculated to prevent the employment of such persons seeking employment, and if such corporation or agent shall fail to furnish such person seeking employment a true statement of such request, notice or communication, etc., if otherwise than in writing make a true statement thereof, and a true interpretation of its meaning, the names and addresses of all such persons or corporations making such inquiry.

Fifth. When any corporation doing business in this State shall have discharged any employee and has failed to give such employee a true statement of the causes of his discharge, within ten days after demand is made therefor, and shall thereafter furnish any other person or corporation, etc., unless it be at the request of the latter, the corporation is charged with discrimination.

Sixth. Wherein a corporation, etc., doing business in this State shall discriminate against any person seeking employment on account of his having participated in a strike.

The effect of the foregoing section of the statute is to deny to a corporation the right to refuse employment to a man who had participated in a strike on a railroad. This is a clear invasion of the constitutional right of an individual or corporation to determine for himself, or itself, the matter of employing or discharging any person already employed,

and the Legislature has no power to prescribe terms by which such employer shall be governed, either in employing or discharging a servant.

The soundness or justice of the reason which prompts refusal or discharge of an employee does not affect the question of the constitutional right to exercise that authority. It may be that the party is acting upon what is a mere "whim," i. e., without any foundation in fact or right, but nevertheless his constitutional right to deny or terminate employment exists, and the Legislature can not, for any reason, make such action a crime on the part of the person or corporation exercising that constitutional power. Gillespie v. State of Illinois, 188 Ill., 176, 52 L. R. A., 283, 80 Am. St., 176, 58 N. E., 1007; Pennsylvania Ry. Co. v. Rogers, 52 W. Va., 450, 62 L. R. A., 178, 44 S. E., 300.

Seventh. Where any corporation or receiver doing business in this State shall give any information or communication in regard to any person who is making application for employment to the effect that such person had participated in a strike.

A failure to comply with any one of the demands above is characterized as a discrimination and is by law made a criminal offense, for which the State may recover $1000, and under the decision of the Court of Civil Appeals the employee may also recover damages limited only by the capacity of the jury to calculate the amount.

The second, third, fourth and fifth grounds of liability under the statute, each is in violation of the natural right to speak or be silent, or the liberty of contract secured by the Constitution of this State and of the United States. Of the great number of cases which have settled these questions adversely to the provisions of the Act of the Texas Legislature, we have cited sufficiently, because there is no conflict on the question.

The second and fourth grounds, as above stated, are most remarkable, for they invest the discharged employee with inquisitorial authority such as has not been intrusted to any officer, and would not be enforced if granted to any officer, except it be in a legal proceeding.

There being no suit pending in court, a private person in his own interest is empowered to demand of a corporation which has discharged him, to disclose to him that corporation's private correspondence, even the conversation which may have occurred between its agents or officers and other people. Originality in devising these provisions surely must be accorded to the Legislature of Texas. We have found nothing like them elsewhere. In the conflict between labor and capital the Legislature has the limitation of its authority in the Constitution of the United States and the State, and the courts have no authority, save to keep both parties within the limits of their constitutional rights.

Beyond controversy, the Act of the Legislature is void, unless it can be sustained as an exercise of the police power. To test the validity of the law as an exercise of that power, we will first ascertain the scope of the power as exercised by State Legislatures. We find no more thorough treatment than is embodied in Houston & T. C. Ry. Co. v. Dallas, 98 Texas, 396, 70 L. R. A., 850, 84 S. W., 648. In that case

the City of Dallas sought to compel the railroad company to reconstruct its crossings upon streets so as to conform to the ordinances of the city. In support of a judgment in accordance with the claim of the city, the *police power* was invoked, and Judge Williams, for the court, in his usual logical and forcible style, said:

"The power of the Legislature to regulate the use of property and the carrying on of business so as to protect the health, safety and comfort of its citizens is recognized by all of the authorities, and its use is not to be defeated by the mere fact that loss or expense may be imposed upon the owners of the property or business. Fertilizing Company v. Hyde Park, 97 U. S., 659. The numerous cases on the subject of nuisances in this court and elsewhere, are but instances of the use of this power. So the decisive question, as we have said before, is whether or not the action of the city is sustained by the existence of facts affecting the public welfare sufficient to justify such an application of the police power, and the answer to this question determines the one made by respondent as to whether or not the action of the city constitutes due process of law.

"The power is not an arbitrary one, but has its limitations. It is commensurate with, but does not exceed the duty to provide for the real needs of the people in their health, safety, comfort and convenience. as consistently as may be with private property rights. As those needs are extensive, various and indefinite, the power to deal with them is likewise broad, indefinite and impracticable of precise definition or limitation. But, as the citizen can not be deprived of his property without due process of law, and as a deprivation by force of the police power fulfills this requirement only when the power is exercised for the purpose of accomplishing, and in a manner appropriate to the accomplishment of the purpose for which it exists, it may often become necessary for courts having proper regard to the constitutional safeguard referred to in favor of the citizen, to inquire as to the existence of the facts upon which a given exercise of a power rests, and into the manner of its exercise; and if there has been an invasion of property rights, under the guise of this power, without justifying occasion, or in any unreasonable, arbitrary and oppressive way, to give to the injured party that protection which the Constitution secures.

"It is therefore not true, as urged by plaintiff, that the judgment of the legislative body concludes all inquiry as to the existence of facts essential to support the assertion of such a power as that now in question. If this were true, it would always be within legislative power to disregard the constitutional provisions giving protection to the individual. The authorities are practically in accord upon the subject. A few quotations will indicate the scope of the inquiry as far as it can be abstractly defined. In Dobbins v. Los Angeles, 195 U. S., 233, 25 Sup. Ct. Rep., 20, the law is thus stated by the Supreme Court of the United States:

" 'It may be admitted that every intendment is to be made in favor of the lawfulness of the exercise of municipal power, making regulations

to promote the public health and safety, and that it is not the province of courts, except in clear cases, to interfere with the exercise of the power reposed by law in municipal corporations for the protection of local rights and the health and welfare of the people in the community. But notwithstanding this general rule of the law, it is now thoroughly well settled by decisions of this court, that municipal by-laws and ordinances, and even legislative enactments undertaking to regulate useful business enterprises, are subject to investigation in the courts with a view to determining whether the law or ordinance is a lawful exercise of the police power, or whether, under the guise of enforcing police regulations, there has been an unwarranted and arbitrary interference with the constitutional right to carry on a lawful business, to make contracts, or to use and enjoy property.'

"In Lawton v. Stelle, 152 U. S., 133-137, 38 L. Ed., 385-388, 14 Sup. Ct. Rep., 499, Mr. Justice Brown, speaking for the court, said upon this subject:

" 'To justify the State in thus interposing its authority in behalf of the public it must appear, first, that the interests of the public generally, as distinguished from those of a particular class, require such interference; and, second, that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals. The Legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private business or impose unusual and unnecessary restrictions upon lawful occupations. In other words, its determination as to what is a proper exercise of its police powers is not final or conclusive, but is subject to the supervision of the courts.' "

We have quoted thus freely, because by so doing the question is fully presented by Judge Williams in his usual forcible manner, and by the Supreme Court of the United States. There can be no pretense that the Act under examination deals with "the real needs of the people in their health, safety, comfort or convenience."

To add cases as authority would be useless, for this is a fundamental principle of free government and gains no force by the repetition of it by different courts. The subject of legislation in this statute and its various provisions as stated above, are purely personal as between the employee and the corporation, and do not directly affect the public in health, safety, comfort, convenience or otherwise.

The Act is in violation of the Constitution of this State, and of the United States, and is void.

It is ordered that the judgment of the District Court and of the Court of Civil Appeals be, and the same are, reversed; and it is ordered that judgment be entered for the plaintiff in error.

Mr. Justice HAWKINS.

From such careful study and consideration as I have been able to give to the constitutional questions which are here involved, I am not now

prepared to express an opinion in this case, but, later on, will prepare and file same.

*Reversed and rendered.*