## CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY *v.* PERRY.

### ERROR TO THE SUPREME COURT OF THE STATE OF OKLAHOMA.

No. 19. Argued April 20, 1921; restored to docket for reargument June 6, 1921; reargued October 6, 1921.—Decided June 5, 1922.

1. Where an issue upon the constitutionality of a state statute, though not actively litigated in the trial court, is actually decided by the state court of last resort in favor of the statute, its judgment is reviewable here under Jud. Code, § 237, as amended September 6, 1916. P. 551.
2. The law of Oklahoma requiring public service corporations to issue to employees, when discharged from or voluntarily quitting their service, letters setting forth the nature of service rendered by such employees, and its duration, with a true statement of the cause of discharge or leaving, is consistent with due process and the equal protection of the laws. Pp. 555, 556. *Prudential Insurance Co.* v. *Cheek, ante,* 530.

3. Provisions that such letters shall be on plain paper selected by the employee, signed in ink and sealed by the superintendent or manager, and free from superfluous figures, words, designs, etc., are likewise valid. P. 555.

75 Okla. 25, affirmed.

Error to a judgment of the Supreme Court of Oklahoma, affirming a judgment for the plaintiff Perry in his action for damages against the railway company.

*Mr. C. O. Blake, Mr. W. R. Bleakmore, Mr. John W. Willmott, Mr. R. J. Roberts, Mr. Thomas P. Littlepage* and *Mr. Sidney F. Taliaferro,* for plaintiff in error, submitted. *Mr. Raymond A. Tolbert* and *Mr. Roy S. Lewis* also were on the briefs.[1]

*Mr. Phil. D. Brewer,* with whom *Mr. Edward S. Vaught* and *Mr. Jean H. Everest* were on the briefs, for defendant in error.

Mr. Justice Pitney delivered the opinion of the court.

This writ of error was sued out to test the validity, in view of the due process and equal protection provisions of the Fourteenth Amendment, of the Service Letter Law of Oklahoma (Act of April 24, 1908, Oklahoma Laws 1907–08, p. 516; Revised Laws Oklahoma 1910, § 3769), applicable to public service corporations and the like, in a case that arose under the following circumstances.

Daniel J. Perry, defendant in error, brought suit against Jacob M. Dickinson, then receiver of the Chicago, Rock Island & Pacific Railway Company (the company itself afterwards was substituted in his place while the cause was pending in the Supreme Court of the State). Plaintiff alleged that while in the employ of the company,

---

[1] At the former hearing the case was argued by *Mr. Blake* on behalf of the plaintiff in error, and submitted by *Messrs. Vaught* and *Everest* for defendant in error.

which operated a railway in Oklahoma and by which he had been employed continuously for a period of years, and while in the performance of his duties as switchman, he received severe personal injuries caused by a defect in a car brake, which either was known or in the exercise of due care by its employees would have become known to the railway company; the latter acknowledged responsibility for his injuries, settled with him through its claim agent on the basis of the company's negligence, furnished him with hospital treatment before and after the settlement; after some months dismissed him from the hospital as able to resume work; then refused to reëmploy him on the ground that he was ineligible by reason of physical incapacity; and after he had unavailingly sought reemployment at intervals during two years, furnished him through its superintendent with a service letter certifying (correctly) that he had been employed upon the company's lines as switchman for a period named, and (contrary to the fact) that he had been dismissed on account of his responsibility in a case of personal injury to himself June 30, 1913, his service being otherwise satisfactory; and he averred that because of this letter he had been unable to secure employment although competent, able and willing.

    Defendant, besides a general denial, averred that the statute upon which the action was based was void because it deprived defendant of the due process of law and denied to it the equal protection of the laws guaranteed by the Fourteenth Amendment, and also because it violated a section of the state constitution in denying to defendant freedom of speech, including the right to remain silent. A trial by jury resulted in a verdict and judgment for plaintiff, which on appeal was affirmed by the Supreme Court. *Dickinson* v. *Perry,* 75 Okla. 25.

    That court overruled the contention that the proof failed to show that the service letter given to plaintiff

did not truly state the cause of his discharge; then proceeded to discuss the constitutional questions, sustained the act, and affirmed the judgment.

Defendant in error moves to dismiss the writ of error on the ground that the constitutionality of the act was not really at issue; that the trial judge's instructions to the jury show that the only substantial question was whether the statements made in the letter actually given by the defendant were false and derogatory, and whether plaintiff had suffered damage thereby. But since the court of last resort of the State actually dealt with and passed upon the question raised by plaintiff in error as to the validity of the statute upon the ground of its being repugnant to the Constitution of the United States, and decided in favor of its validity, it is clear that, under the first paragraph of § 237, Judicial Code, as amended by Act of September 6, 1916, c. 448, 39 Stat. 726, we have jurisdiction to pass upon the question, and the motion to dismiss must be denied. *Miedreich* v. *Lauenstein*, 232 U. S. 236, 243; *North Carolina R. R. Co.* v. *Zachary*, 232 U. S. 248, 257.

Again, in discussing the merits, defendant in error insists that the federal question is not necessarily involved; that the constitutional objection was waived when the company, instead of refusing to give a letter, of its own volition gave to Perry upon his dismissal a service letter which was false and derogatory, and which caused special damage that was pleaded and proved. At first blush, it seems somewhat strange for the company to aver that it acted under compulsion of a void statute, when what it did was contrary to the command of the statute; it almost looks as if it were merely held in damages for what ordinarily might be called a libel. But the case cannot properly be dealt with upon this ground. The Supreme Court of Oklahoma not only passed upon the question of the constitutionality of the Service Letter Law but deemed it

necessary to pass upon it. So far as can be gathered from its opinion, there was no other legal ground upon which the judgment could be supported. Apparently, under the law of Oklahoma apart from the statute, no legal duty was imposed upon the employer in such a case to speak the truth in a communication made respecting a discharged employee; nor was there other ground of liability for damages in case of its falsity. The statute is the essential foundation upon which the judgment rests, and we cannot find that the objections to its validity have been waived.

The act (Oklahoma Laws 1907–08, p. 516; Revised Laws Oklahoma 1910, § 3769) reads as follows:

" 3769. *Corporation to give letter to employee leaving service.* Whenever any employee of any public service corporation, or of a contractor, who works for such corporation, doing business in this State, shall be discharged or voluntarily quits the service of such employer, it shall be the duty of the superintendent or manager, or contractor, upon request of such employee, to issue to such employee a letter setting forth the nature of the service rendered by such employee to such corporation or contractor and the duration thereof, and truly stating the cause for which such employee was discharged from or quit such service; and, if any such superintendent, manager or contractor shall fail or refuse to issue such letter to such employee, when so requested, or shall wilfully or negligently refuse or fail to state the facts correctly, such superintendent, manager or contractor shall be deemed guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not less than one hundred dollars and not more than five hundred dollars, and by imprisonment in the county jail for a period of not less than one month and not exceeding one year: Provided, that such letter shall be written, in its entirety, upon a plain sheet of white paper to be selected by such employee.

No printed blank shall be used, and if such letter be written upon a typewriter, it shall be signed with pen and black ink and immediately beneath such signature shall be affixed the official stamp, or seal, of said superintendent, manager or other officer of such corporation or contractor, in an upright position. There shall be no figures, words or letters used, upon such piece of paper, except such as are plainly essential, either in the date line, address, the body of the letter or the signature and seal or stamp thereafter, and no such letter shall have any picture, imprint, character, design, device, impression or mark, either in the body thereof or upon the face or back thereof, and any person of whom such letter is required who fails to comply with the foregoing requirements shall be liable to the penalties above prescribed."

The Supreme Court (75 Okla. 31), after stating, on familiar grounds, that the legislature itself was the judge of the conditions which warranted legislative enactments, and laws were only to be set aside when they involved such palpable abuse of power and lack of reasonableness to accomplish a lawful end that they might be said to be merely arbitrary and capricious, and hence out of place in a government of laws and not of men, went on to say: "Whether or not the custom still prevails, it appears that at one time it was the rule among railway companies and other corporations to keep a list of employees who were discharged or left the service and to furnish such list to other railway companies and employers. Any reason which might be agreed among employers was sufficient for 'blacklisting' employees, thereby possibly preventing their again securing employment in their accustomed occupation or trade. It was this abuse, among other things, which caused the legislatures of various States to enact laws declaring blacklisting unlawful, and requiring corporations to give a letter to employees discharged or leaving the service, setting forth the reasons

for the discharge of the employee or of his leaving the service and the nature of the service rendered by the employee. . . . [p. 32] The idea of requiring employers to give employees leaving their service a letter showing the character of work performed while in their service is not a new one. The common law recognized a moral obligation resting upon the employers to give a ' character ' to servants leaving the employment of their masters, but no legal obligation of this nature existed until laws touching these matters were enacted. . . . [p. 33] There is nothing in the law contested which attempts to prevent a corporation from hiring whomsoever it pleases, or from discharging its employees when it sees fit. Neither is there anything in the law which requires a corporation to give a letter of recommendation to employees discharged or leaving its service. All that is required is a statement of the employer showing the character of services rendered by the employee and the reason for his leaving the service of his employer. It is a certificate which, when the facts are favorable to the employee, may assist him in securing other work along the line of his trade, and is a certificate to which he feels that in justice he is entitled. . . . There is nothing unusual or revolutionary in requiring the employer to give a certificate to the employee leaving his service showing the time he has been employed and the character of service rendered. . . . The employee who perhaps has devoted years of his life to a particular trade, when relinquishing employment, is without evidence to present in another locality or to another employer unless he has some certificate showing the term and character of his previous employment."

The court proceeded to say that the legislation was a warranted and lawful exercise of the police power of the State, that the contention that it involved a private and not a public matter, in that only the individual employee and the individual employer were concerned, was a pure

assumption that failed to recognize existing conditions; that the welfare of employees affected that of entire communities and the whole public.  The decision of the Supreme Court of Missouri in *Cheek* v. *Prudential Insurance Co.,* 192 S. W. 387, 392, affirmed this day in our No. 149, *ante,* 530, was cited with approval and the statute attacked held not to deny to defendant due process of law nor to constitute an illegal infringement upon the right of contract.

The contention that the statute was a denial and abridgment of the right of free speech was overruled upon the ground that the right did not exist under the state constitution in the absolute form in which it was asserted. The decisions by the supreme courts of Georgia, Kansas and Texas in *Wallace* v. *Georgia, C. & N. Ry. Co.,* 94 Ga. 732; *Atchison, etc. Ry. Co.* v. *Brown,* 80 Kans. 312; and *St. Louis Southwestern Ry. Co.* v. *Griffin,* 106 Tex. 477, were disapproved.

Except for the particular requirements contained in the proviso, the statute here in question does not differ substantially from the Missouri statute this day sustained in *Prudential Insurance Co.* v. *Cheek, ante,* 530, and may be sustained as against the contention that it is inconsistent with the guaranty of " due process of law " for the reasons set forth in the opinion in that case.

The proviso requires that the service letter shall be written entirely upon a plain sheet of white paper to be selected by the employee, no printed blank to be used and the letter if written upon typewriter to be signed with pen and black ink, and immediately beneath the signature an official stamp or seal to be affixed in an upright position.  No figures, words or letters to be used, except such as are plainly essential, either in the date line, the address, the body of the letter, or the signature and seal or stamp; and no picture, imprint, character, design, device, impression or mark to be either in the body or upon the face or back of the letter.  Manifestly these

provisions are designed to insure the authenticity of the document, to prevent fabrication and alteration, and to make sure that it shall not only be fair and plain upon its face but shall exclude any cryptic meaning. They are contrived to prevent the purpose of the act from being set at naught by the giving of fraudulent service letters, which while bearing one meaning to the employee might bear another and very different one to the prospective employer to whom they might be presented. The act being valid in its main purpose, these provisions intended to carry it into effect, must be sustained. *Chicago, Burlington & Quincy R. R. Co.* v. *McGuire*, 219 U. S. 549, 570; *Second Employers' Liability Cases*, 223 U. S. 1, 52.

The contention that the Service Letter Law denies to plaintiff in error the equal protection of the laws is rested upon the fact that it is made to apply to public service corporations (and contractors working for them), to the exclusion of other corporations, individuals, and partnerships said to employ labor under similar circumstances. This is described as arbitrary classification. We are not advised of the precise reasons why the legislature chose to put the policy of this statute into effect as to public service corporations, without going further; nor is it worth while to inquire. It may have been that the public had a greater interest in the personnel of the public service corporations, or that the legislature deemed it expedient to begin with them as an experiment—or any one of a number of other reasons. It was peculiarly a matter for the legislature to decide, and not the least substantial ground is present for believing they acted arbitrarily. We feel safe in relying upon the general presumption that they " knew what they were about." *Middleton* v. *Texas Power & Light Co.*, 249 U. S. 152, 157–158, and cases cited.

*Judgment affirmed.*

THE CHIEF JUSTICE, MR. JUSTICE VAN DEVANTER and MR. JUSTICE McREYNOLDS dissent.