

# THE ATTORNEY GENERAL
# OF TEXAS

JIM MATTOX
ATTORNEY GENERAL

November 14, 1989

Honorable Bob McFarland
Chairman
Criminal Justice Committee
Texas State Senate
P. O. Box 12068
Austin, Texas 78711

Opinion No. JM-1116

Re: Validity under article I, section 8, of the Texas Constitution of article 5196, V.T.C.S., which requires a corporation to give a discharged employee a statement of reasons for the termination (RQ-1747)

Dear Senator McFarland:

You request an opinion on the constitutionality of section 3 of article 5196, V.T.C.S. This provision reads in part:

> Either or any of the following acts shall constitute discrimination against persons seeking employment:
>
> . . . .
>
> 3. Where any corporation . . . doing business in this state . . . shall have discharged an employee and such employee demands a statement in writing of the cause of his discharge, and such corporation . . . fails to furnish a true statement of the same to such discharged employee, within ten days after such demand, or . . . shall fail, within ten days after written demand for the same, to furnish to any employee voluntarily leaving the service of such corporation or receiver, a statement in writing that such employee did leave such service voluntarily.

Statutes of this nature are commonly called "service letter statutes." Annot., 24 A.L.R.4th 1115 (1983). Violators of the Texas service letter statute are subject to forfeiting one thousand dollars to the state. V.T.C.S. art. 5199. It is the duty of the attorney general, or the

district or county attorney under the direction of the attorney general, to sue to recover the forfeiture. Id.  A private cause of action for damages may exist under service letter statutes. See Cheek v. Prudential Ins. Co., 192 S.W. 387, 393 (Mo. 1917).

The Texas service letter act was adopted in 1907 and codified as section 3, article 594 of the 1911 code. See Acts 1907, 30th Leg., ch. 67, § 1, at 142. Its title read as follows: "An Act to define and prohibit discrimination against persons seeking employment, and to prescribe penalties for the breach of said act." In 1910 the court of civil appeals identified the purpose of this provision as follows:

> The statute here under discussion was passed to meet and remedy an evil that had grown up in this state among railway and other corporations to control their employees. It seems that a custom had grown up among railway companies not to employ an applicant for a position until he gave the name of his last employer, and then write to such company for the cause of the applicant's discharge, if he was discharged, or his cause for leaving such former employer. If the information was not satisfactory to the proposed employer, he would refuse to employ the applicant. They could thus prevent the applicant, by failing to give a true reason for his discharge or blacklisting him, from procuring employment in either instance.

Saint Louis Southwestern Ry. v. Hixon, 126 S.W. 338, 341 (Tex. Civ. App. 1910), rev'd on other grounds, 137 S.W. 343 (Tex. 1911).

In Hixon, the former employee alleged that the corporation's service letter did not state the true cause of his discharge. The court of appeals affirmed a judgment of $2,500 for the employee against the corporation, rejecting various arguments for holding the statute unconstitutional. The supreme court reversed on the ground that the former employee had failed to establish that statements in the service letter were untrue. See also Dickinson v. Perry, 181 P. 504 (Okla. 1919), aff'd, 259 U.S. 548, 550 (1922); Cheek v. Prudential Ins. Co., supra, at 389.

As you point out in your letter, the Texas Supreme Court held the service letter provision unconstitutional in <u>Saint Louis Southwestern Ry. v. Griffin</u>, 171 S.W. 703 (Tex. 1914). In <u>Griffin</u>, the court held that article 594, section 3, of the 1911 code interfered with a corporation's right to discharge employees at will without cause, and accordingly violated the corporation's freedom of contract under the United States Constitution. It found that the statute violated the equal protection clause of the Fourteenth Amendment of the Constitution. The <u>Griffin</u> case also held that the service letter requirement violated article I, section 8, of the Texas Constitution, which guarantees the freedom of the people to speak, write or publish their opinions on any subject. The court stated as follows:

> The liberty to write or speak includes the corresponding right to be silent, and also the liberty to decline to write. To say that one can be compelled at the instance of another party to do what he has the constitutional liberty to do or not is a contradiction that is not susceptible of reconciliation. (Citations omitted.)

<u>Griffin</u>, <u>supra</u>, at 705. The supreme court concluded that the provision could not be sustained as an exercise of the police power, stating as follows:

> The subject of legislation in this statute and its various provisions, as stated above, are purely personal as between the employee and the corporation, and do not directly affect the public, in health, safety, comfort, convenience, or otherwise.

<u>Id.</u> at 707.

Within a few years of the <u>Griffin</u> decision, the United States Supreme Court ruled that the Missouri service letter statute was constitutional, finding that it did not interfere with the corporation's freedom to contract, deprive it of any property or liberty without due process, or deny it the privileges and immunities of citizens or the equal protection of the laws. <u>Prudential Ins. Co. v. Cheek</u>, 259 U.S. 530 (1922). "The state with good reason might regulate the terms and conditions of employment, including the methods of accepting and dismissing employees, so as to

prevent the corporations from producing undue detriment to the individuals concerned . . . ." *Id.* at 545.

In Attorney General Opinion JM-623 (1987), this office concluded that section 3 of article 5196, V.T.C.S., did not violate the due process clause or the equal protection clause of the Fourteenth Amendment to the United States Constitution. Thus, developments in federal constitutional law since *Griffin* have shown its reasoning and conclusion on the federal issues to be incorrect.

The *Griffin* court's holding that the service letter statute violated article I, section 8, of the Texas Constitution has never been challenged in our court system. Attorney General Opinion JM-623 (1987), at 5. In addressing this aspect of *Griffin*, Attorney General Opinion JM-623 stated as follows:

> Even though we may disagree with this interpretation, we are not at liberty to modify or overrule the Texas Supreme Court's holding in *Griffin*. This is especially true since our legislature and courts have not done so.

*Id.* at 6.[1]

---

1. In 1929, the legislature reenacted article 594 as article 5196, V.T.C.S. Acts 1929, 41st Leg., ch. 245, at 509. The emergency clause stated that "the codifiers of the Revised Civil Statutes of Texas of 1925, omitted from the definition of discrimination many of the material provisions of the former law on that subject as set out in Article 594 of the Revised Civil Statutes of 1911 . . . ." A prior opinion of this office stated, without mentioning any federal cases, that the codifiers of the 1925 statutes had obviously omitted article 594 because it had been declared unconstitutional in *Griffin*. Attorney General Opinion O-3562 (1941) (overruled by Attorney General Opinion JM-623 (1987)). However, the legislature's reenactment of the provision omitted from the 1925 code could also mean that the legislature was aware of the *Prudential* case and thought that it had overruled the reasoning of *Griffin*.

It is well established that opinions of the attorney general do not have the force of law. See, e.g., Travis County v. Matthews, 235 S.W.2d 691 (Tex. Civ. App. - Austin 1951, writ ref'd n.r.e.); Gaynor Const. Co. v. Board of Trustees, Ector County Indep. School Dist., 233 S.W.2d 472 (Tex. Civ. App. - El Paso 1950, writ ref'd). As stated in Attorney General Opinion JM-623, we cannot overrule a judicial decision. We can, however, review developments in the law since Griffin was decided, and attempt to predict whether the Texas courts, if faced with this issue in the future, would find that the service letter requirement violated a corporation's free speech rights under article I, section 8, of the Texas Constitution.

In 1914, when the Texas Supreme Court ruled in Griffin, the First Amendment had not yet been held to be applicable to the states through the Fourteenth Amendment. See Gitlow v. New York, 268 U.S. 652 (1925); Prudential Ins. Co. v. Cheek, supra, at 542-43. Thus, the court could not have based its decision about corporate speech rights on the First Amendment of the United States Constitution. Instead, it followed two state cases that found service letter statutes unconstitutional under the freedom of expression provisions of their respective constitutions. See Wallace v. Georgia, C. & N. Ry., 22 S.E. 579 (Ga. 1894); Atchison, T. & S. F. Ry. v. Brown, 102 P. 459 (Kan. 1909). In Prudential Ins. Co. v. Cheek, the United States Supreme Court commented as follows on this aspect of Griffin and the Kansas and Georgia cases it relied on:

> The cases cited from Georgia, from Kansas, and from Texas place material dependence upon provisions of the several state Constitutions guaranteeing freedom of speech, from which is deduced as by contrast a right of privacy called the 'liberty of silence'; and it seems to be thought that the relations between a corporation and its employees and former employees are a matter of wholly private concern. But, as we have stated, neither the Fourteenth Amendment nor any other provision of the Constitution of the United States imposes upon the states any restrictions about 'freedom of speech' or the 'liberty of silence' . . . .

Prudential, supra, at 542-43.[2]

In a 1983 decision, the Supreme Court of Missouri concluded that the state service letter statute did not violate corporate rights of free speech under the First Amendment. Hanch v. K. F. C. Nat'l Management Corp., 615 S.W.2d 28 (Mo. 1981) (en banc). The court stated:

> The statute's mandate affects corporate rights of free speech no more than the plethora of state and federal statutes and regulations that require corporations to keep the governments to which they owe their existence appraised [sic] of their activities. Few are the cases raising first amendment challenges to tax, corporate or securities laws requiring corporations to speak truthfully. The compulsion to speak truthfully to a former employee would appear to be a small price to pay for the benefits gained by corporations, and their owners, for the enjoyment of their statutory franchises.

Id. at 36.

The Eighth Circuit of the United States Court of Appeals also found the Missouri statute constitutional, reversing a federal district court decision that found it to violate the free speech provision of the First Amendment. Rimmer v. Colt Indus. Operating Corp., 656 F.2d 323 (8th

---

2. In Chicago, R. I. & P. Ry. v. Perry, 259 U.S. 548, 555 (1922), the United States Supreme Court stated that Prudential had overruled the contention that the service letter statute denied the right of free speech, "upon the ground that the right did not exist under the state Constitution in the absolute form in which it was asserted." It also stated that the "decisions by the Supreme Courts of Georgia, Kansas, and Texas . . . were disapproved." Id. This commentary on state court interpretations of state constitutional provisions is dicta, since the United States Supreme Court looks to the decisions of a state's courts to determine the meaning of its laws. See Clay v. Sun Ins. Office, 363 U.S. 207 (1960). This dicta is nonetheless of interest because it shows how the United States Supreme Court thought about the issue before us.

Cir. 1981), rev'q, 495 F. Supp. 1217 (W.D. Mo. 1980). The court of appeals noted that in First Nat'l Bank v. Bellotti, 435 U.S. 765 (1978), the Supreme Court held that speech otherwise protected by the First Amendment does not lose that protection simply because its source is a corporation. The eighth circuit concluded, however, that the First Nat'l Bank decision did not shield corporations from state statutes that require them to make truthful statements or take actions that effectuate legitimate legislative goals. Rimmer, supra, at 328. "There are numerous statutes that similarly, and nevertheless constitutionally, restrict the 'free speech' rights of corporate employers." Id. (citing National Labor Relations Act, 29 U.S.C. § 158(c) (1976); Employee Retirement Income Security Act, 29 U.S.C. § 1132(c) (1976); Missouri Workers' Compensation Act, Mo.Ann.Stat. § 287.380 (Vernon Supp. 1981)). The statute was adopted to protect certain economic and social interests and was properly characterized as economic or social legislation enacted for the general public welfare. Id. at 328-29. It did not affect any "fundamental" First Amendment rights. Id. at 329 (analyzing service letter statute in terms of equal protection clause and First Amendment of the United States Constitution).

Texas cases decided more recently than Griffin rely on a broader conception of the police power than did that case. The Supreme Court of Texas has stated that "the very foundation of the police power is the control of private interests for the public welfare . . . ." Town of Ascarate v. Villalobos, 223 S.W.2d 945, 950 (Tex. 1949) (quoting 16 C.J.S. Constitutional Law § 199, at 581). The court has recognized the validity of legislation that protects employee rights in disputes with the employer. See Construction & Gen. Labor Union v. Stephenson, 225 S.W.2d 958 (Tex. 1950) (picketing). The police power authorizes the adoption of legislation designed to prevent deceitful communications in a commercial setting. "A state statute designed to prevent the deception of consumers of particular goods is recognized as a valid exercise of police power." Majestic Indus. v. Saint Clair, 537 S.W.2d 297, 302 (Tex. Civ. App. - Austin 1976, writ ref'd n.r.e.); see also Clark v. State, 665 S.W.2d 476 (Tex. Crim. App. 1984) (the First Amendment does not protect intentionally false or misleading statements made in a commercial context).

Exercises of the police power that involve restraints on freedom of speech are not for that reason necessarily invalid. See Allen v. State, 604 S.W.2d 191 (Tex. Crim. App. 1980) (discussing First Amendment of United States

Constitution).  In upholding  a provision  of the  Alcoholic
Beverage Code that  prohibited solicitation of  drinks by  a
beer retailer's  employee,  the court  of  criminal  appeals
quoted the United States Supreme Court as follows:

> It has never been deemed an abridgement of
> freedom of speech or  press to make a  course
> of conduct illegal merely because the conduct
> was in part initiated, evidenced, or  carried
> out by  means  of  language,  either  spoken,
> written, or printed. . . .  Numerous examples
> could be  cited  of communications that  are
> regulated without offending the First  Amend-
> ment, such  as  the exchange  of  information
> about  securities, . . .  corporate  proxy
> statements, . . . the exchange  of price  and
> production  information about  competitors,
> . . . and employers'  threats of  retaliation
> for the labor activities of employees.

Id. at 192 (citing Ohralik v. Ohio State Bar Ass'n, 436 U.S.
447, 456 (1978)).

The court of criminal appeals quoted the United  States
Supreme Court in  answering an argument  based on the  First
Amendment of the United States Constitution, not article  I,
section 8, of the Texas Constitution.  However, decisions of
Texas  courts  that  deal  with  the  Texas  constitutional
provision also  recognize  that permissible  regulations  of
conduct may  sometimes include  regulation of  speech.   Our
courts  have  upheld  statutes  that  require  persons   to
communicate  information  or  that  limit  some  kinds   of
communications, finding  them  consistent  with  article  I,
section 8, of the Texas Constitution.

In finding  that  an injunction  to  prevent  untrained
layman from advertising and selling blank will forms did not
violate article I, section 8, of the Texas Constitution, the
court pointed out that  constitutional rights of speech  and
publication  are  not  absolute.  Palmer  v.  Unauthorized
Practice Comm. of State Bar, 438 S.W.2d 374 (Tex. Civ.  App.
- Houston [14th Dist.] 1969, no  writ).  In  a given  case
where the public interest is  involved, courts may strike  a
balance between fundamental constitutional freedoms and  the
state's interest in the welfare of its citizens.  Id.

The court of criminal appeals  has held that a  statute
proscribing harassing  and threatening  telephone calls  did
not violate article I, section 8, of the Texas  Constitution

or the First Amendment of the United States Constitution. Schuster v. State, 450 S.W.2d 616 (Tex. Crim. App. 1970) (applying Penal Code article 476 (1925)).

In another case, an injunction prohibiting a 40 percent shareholder of a corporation from writing letters to corporate clients asking for assistance in a liquidation suit was upheld as not violative of article I, section 8, of the Texas Constitution. Karamchandani v. Ground Technology, Inc., 678 S.W.2d 580 (Tex. App. - Houston [14th Dist.] 1984, writ dism'd). The injunction was granted to prevent interference to the contractual relationships of the corporation and interference from private communication. Id.

Finally, a recent decision of the court of criminal appeals indicates that the free speech clause of the Texas Constitution does not create an absolute privilege to be silent. Ex parte Grothe, 687 S.W.2d 736 (Tex. Crim. App. 1984), cert. denied, 474 U.S. 944 (1985). In a prosecution for obstructing a public passageway where the key issue was whether the defendant had chained himself to a doorway during the protest, the defendant sought to subpoena a newspaper photographer who had photographed the incident. The photographer refused to make his photographs available and was held in contempt. The court held that neither the First Amendment of the United States Constitution nor article I, section 8, of the Texas Constitution created a privilege that would excuse the photographer from testifying and producing photographs. Id. at 737.

The Texas legislature has enacted numerous statutes that require corporations and others to disclose information to governmental agencies, to employees, or to shareholders. See, e.g., V.T.C.S. arts. 5221b-14(b) (employers prohibited from making false statements or failing to disclose material fact to prevent payment of unemployment benefits), 5221k, § 8.01(a) (record-keeping and reporting requirement applicable to persons under investigation by Texas Human Rights Commission); Tex. Bus. Corp. Act arts. 2.44 (right of shareholders to examine corporate books and records), 9.01 (corporation, officers, and director shall answer interrogatories propounded by secretary of state to enable him to determine whether corporation is in compliance with Business Corporation Act); Agric. Code ch. 125 (duty of certain employers of agricultural laborers to make information about their use of toxic chemicals available to employees and others); Health & Safety Code ch. 502 (employers must make available to employees information about certain hazardous chemicals stored or used in the workplace). Thus, a statute

requiring a corporation to disclose information is no longer the novelty it appeared to be in 1914, when <u>Griffin</u> was decided.

Based on our review of decisions of the Texas courts subsequent to <u>Griffin</u> and the cases on service letters from other states, we believe that the Supreme Court of Texas, if it were to reconsider section 3 of article 5196, V.T.C.S., would find that it did not violate article I, section 8, of the Texas Constitution. Until the supreme court overturns its decision in <u>Griffin</u>, however, section 3 of article 5196, V.T.C.S., will be unconstitutional. Following a judicial decision that a statute is unconstitutional, the statute remains on the books unless expressly repealed by the legislature. 39 Op. [U.S.] Att'y Gen., 22 (1937). When a court overrules a prior judicial decision that held a statute unconstitutional, the statute will be held valid from its effective date. <u>Storrie v. Cortes</u>, 38 S.W. 154, 158 (Tex. 1896); <u>see also</u> <u>State ex rel. Badgett v. Lee</u>, 22 So.2d 804 (Fla. 1945); <u>Christopher v. Mungen</u>, 55 So. 273 (Fla. 1911). <u>But see</u> <u>Chavers v. Harrell</u>, 166 So. 261 (Fla. 1935) (state may not prosecute for conduct in violation of statute during time it was held unconstitutional). As we have already stated, an opinion of the attorney general cannot overrule a judicial decision, and therefore cannot validate the service letter statute.

A statute held unconstitutional by the courts does not cease to exist for the purpose of amendment by the legislature. <u>Ex parte Hensley</u>, 285 S.W.2d 720 (Tex. Crim. App. 1956). The <u>Griffin</u> decision does not prevent the legislature from amending article 5196, V.T.C.S. The legislature may update this statute or make the changes, if any, it deems necessary due to the passage of time since its re-enactment in 1929. Attorney General Opinion JM-623 is modified with respect to its discussion of article I, section 8, of the Texas Constitution.

### S U M M A R Y

In <u>Saint Louis Southwestern Ry. v. Griffin</u>, 171 S.W. 703 (Tex. 1914), the Texas Supreme Court held that section 3 of article 5196, V.T.C.S., was invalid because it was inconsistent with article I, section 8, of the Texas Constitution. On the basis of judicial decisions of Texas courts and the courts of other jurisdictions, we predict that the Texas

Supreme Court, if it again considered this question, would find section 3 of article 5196, V.T.C.S., consistent with article I, section 8, of the constitution. Until the Texas Supreme Court overrules its decision in _Griffin_, however, section 3 of article 5196, V.T.C.S., will be unconstitutional. The decision in _Griffin_ does not prevent the legislature from amending section 3 of article 5196, V.T.C.S. Attorney General Opinion JM-623 (1987) is modified with respect to its discussion of article I, section 8, of the Texas Constitution.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Susan L. Garrison
Assistant Attorney General